THE PEOPLE OF THE STATE OF NEW YORK EX REL. THE MOUNT MAGDALEN SCHOOL OF INDUSTRY AND REFORMATORY OF THE GOOD SHEPHERD, RESPONDENT, *v.* THOMAS DICKSON, AS TREASURER OF RENSSELAER COUNTY, APPELLANT.

*Charitable institutions — right to compel by* mandamus *the payment of an audit for board of children committed to them — effect of irregularities in the commitments.*

Where a claim has been presented by a charitable institution, incorporated under chapter 319 of the Laws of 1848, and having the approval of the State board of charities under chapter 446 of the Laws of 1883, for the board and maintenance of certain girls committed to said institution by a committing magistrate, and the board of supervisors has audited the bill, the county treasurer will be compelled by *mandamus* to pay it, although, by reason of defects and irregularities in the commitments, the children might have had a right to be discharged from custody upon an application made therefor.

While a committing magistrate may not have authority, without the approval of the board of supervisors, to send such children to any institution he may select of the character named, yet where the selection of the institution has been ratified by the board of supervisors an objection cannot be taken by the county treasurer to the audit of the bill for the support of such children.

The institutions referred to in section 713 of the Penal Code, as amended, are not those alone which were in existence when chapter 240 of the Laws of 1879 was passed.

APPEAL by the defendant from a final order directing that a peremptory writ of *mandamus* issue to compel the defendant to pay

to the relator the amount of its bill, as audited by the board of supervisors of Rensselaer county, together with the costs of the proceedings, which said order was entered in the office of the clerk of Rensselaer county on the 25th day of March, 1890, after a hearing before the court at the Rensselaer Circuit, at which a jury was impanneled; and the relator having proved all the facts in his petition and writ, and having rested his case, and the jury having been discharged by the consent of counsel, there being no question of fact for said jury to decide, the court found that the plaintiff was entitled to, and that a peremptory writ of *mandamus* forthwith issue in the above-entitled proceedings to the defendant and his successors in office, requiring and commanding them to pay the audit of the board of supervisors of Rensselaer county, amounting to the sum of $4,015.86, with interest.

*George B. Wellington*, for the appellant.

*James H. Ryan*, for the respondent.

LEARNED, P. J.:

This is an appeal from a final judgment, after a trial, awarding a peremptory writ of *mandamus*. The relator is a charitable institution incorporated under chapter 319, Laws of 1848, and having the approval of the State Board of Charities under chapter 446, Laws of 1883. During the year 1889, down to October first, the relator had had in its charge certain girls committed to it by certain committing magistrates. It rendered to the board of supervisors a bill, duly verified, for the board and maintenance of these girls. The board audited the bill December 16, 1889, at $4,015.86. The county treasurer refuses to pay it, and the *mandamus* was granted to compel him to pay. His position is that the claim is not a county charge, and that the auditing was unauthorized.

The question here is, not whether any or all of the children committed by the magistrate to the relator might not have obtained a discharge from custody by *habeas corpus* on the ground of imperfections and errors in the commitments. That would be a very different question, and one which would arise between the children respectively and the present relator, as in *People ex rel. Day* v. *Mount Magdalen School* (28 N. Y. St. Rep., 254).

In the case now before us the relator has received and cared for these children under commitments made by magistrates, and has duly rendered its bill to the board of supervisors, and that bill has been audited. The county treasurer refuses to pay, and he places his refusal on the ground that the bill is not a county charge.

Chapter 240, Laws of 1879, provides that children under sixteen, convicted as vagrant, truant or disorderly, must be sent to some reformatory or other institution as provided for in the case of juvenile delinquents. And the act requires boards of supervisors to take such action in the matter as may be necessary to carry out the provisions of this act.

Section 713, Penal Code, as amended, requires that a child under sixteen, committed for misdemeanor under any of the provisions of that Code, must be committed to some reformatory, charitable or other institution authorized by law to receive such child.

Subdivision 5, section 291 of the same Code, as amended by chapter 46, Laws of 1884, and by chapter 145, Laws of 1888, declares that a child, actually or apparently under sixteen, found doing certain acts described in the preceding subdivisions or coming within the descriptions in section 292, may be committed to any incorporated charitable reformatory. Subdivision 6 authorizes a similar temporary commitment for trial and a similar commitment of a child held as a witness, and provides that the institution shall be entitled to like compensation proportionally as on a final charge.

Now, these provisions plainly show that, under these statutes, the institution to which children are thus committed is to receive compensation. The institution, as to these children, is placed in the position of the jail or the poor-house, as the case may be. The law makes a wise and humane substitution of a charitable and reformatory institution for the prison to which an adult, convicted or detained, would be sent; and for the poor-house to which an adult pauper would be sent. And where provisions of this nature are made by the statute it is evident that it is not intended, as the respondent seems to claim, that these children thus committed are to be kept without compensation, when the board of supervisors have allowed and audited the bill for such compensation.

It will be seen that section 713, above referred to, is imperative. And, although it does not use the words " Juvenile delinquents,"

yet a child under sixteen committed for a misdemeanor is plainly a juvenile delinquent. Now chapter 240 of the Laws of 1879 is general. It is not necessarily limited in its effect to institutions then existing. It directs that vagrant, etc., children be sent to the same kind of institution to which juvenile delinquents are to be sent. And that kind is defined in section 713 of the Penal Code above cited.

It is not necessary for us to decide whether, without the approval of the board of supervisors, the committing magistrates may send to any institution, of the character named, which they may select. It is enough in this case that the selection has been ratified by the board. And we cannot think that the institutions intended by these sections of the Penal Code are necessarily such as were in existence when chapter 240 of the Laws of 1879 was passed.

That an institution to which children are thus committed for vagrancy, etc., is to receive compensation, is further shown by subdivision 6 of section 291, above cited, which speaks of the compensation for temporary commitments and for the detention of witnesses as proportional to that on final commitments. The same is also shown by section 921, Code of Criminal Procedure, which, in cases of a commitment of a child to an institution under the Penal Code, authorizes a magistrate to order the father to pay a sum for the child's support which is to be credited by the institution to the city, town or county against any sum due for maintenance.

It is further urged by the respondent that this bill should not be paid by reason of the imperfection or, as alleged, invalidity of the commitments. We have already remarked that this litigation is not between the persons committed and the Institution. Questions which might be very important on a *habeas corpus* do not necessarily arise here. The children made no question as to the legality of their commitment. They acquiesced in it. The relator accepted their custody and cared for them. If under commitments of a similar character as to their alleged irregularity an adult had been confined in jail, and the board of supervisors had allowed the sheriff's bill for maintenance, could the county treasurer lawfully refuse to pay?

We may notice here that chapter 145, Laws of 1888, passed April eighteenth, would seem, as to many of these commitments at

least, to make them sufficient. And chapter 220 of the same year, amending section 888 of the Code of Criminal Procedure, expressly authorizes in certain cases the commitment of a vagrant child described in subdivision 8, section 887, Code of Criminal Procedure, as provided in section 291 of the Penal Code.

We think, then, that as between the relator and the board of supervisors the custody of these children was such that the board might allow it as a county charge. (*Osterhoudt* v. *Rigney*, 98 N. Y., 232.) The respondent relies for his objection solely on the commitment. No proof was given as to any record, other than the commitment, of the trials of these children. (*People ex rel. Trainor* v. *Baker*, 89 N. Y., 466.) Now, while we need not deny that a commitment could be made so entirely beyond the power of the magistrate on its face that an institution like the relator could not lawfully be paid for the custody of a child thereunder, even after the audit by the board, we do not think that such a case is here. And though the form of the commitments is not as perfect as it might be, yet as between the relator and the county treasurer we are of the opinion that he should pay the audited bill.

The judgment is affirmed, with costs.

LANDON, J., concurred.

Judgment affirmed, with costs.