JAMES CORBETT, an Infant, by MICHAEL J. CORBETT, his Guardian ad Litem, Respondent, *v.* ST. VINCENT'S INDUSTRIAL SCHOOL OF UTICA, Appellant.

*Master and servant — duty of the master as to the character of a laundry machine furnished to his servant — failure of a foreman to instruct a boy as to the manner of operating a machine and as to the danger incident thereto — a charitable corporation to which the boy is committed held not to be liable because thereof — it is a governmental agency — the rule of* respondeat superior *is not applicable.*

A master is not required to furnish for the use of his servant the best and safest machinery known. He is simply required to furnish such machinery as is reasonably safe and suitable, and he discharges his full duty in that regard if he furnishes a machine in perfect repair which is in general use and which efficiently does the work which it is intended to do.

The proprietor of a laundry who, for a period of nine years, uses, without accident, a mangle purchased from a manufacturer of good reputation and which is precisely similar to many machines in general use, is not liable to an employee who sustains injuries in consequence of having his hand caught between the rollers of the machine because of the proprietor's failure to install upon the machine safety appliances for which no provision had been made by the manufacturer, although it was feasible to install such appliances on the machine and they were in use upon similar machines in the vicinity and would, if installed, render an accident like the one in question substantially impossible.

If, however, a boy fifteen years of age, who had never had any experience in the operation of machinery, is detailed to operate the machine, and the foreman of the laundry fails to instruct him as to the proper manner of operating it and to warn him of the danger incident to its operation, the question whether the proprietor of the laundry was guilty of negligence in this respect is one of fact for the jury.

A corporation incorporated under chapter 319 of the Laws of 1848, as amended by chapter 446 of the Laws of 1883, " to maintain and support an industrial school and asylum for the sustenance and education of male orphan children," which is conducted by the Christian Brothers without compensation and which is largely supported by charity, although it receives from the various counties of the State a certain weekly sum for the support of the boys committed to it by the magistrates and other correctional officers of the county pursuant to section 713 of the Penal Code, and also a small sum from the sale of surplus farm products and manufactured articles, is a charitable and benevolent corporation and is not liable to a boy committed to it by a police magistrate for injuries sustained by him while operating a machine in the laundry of the institution in consequence of the negligence of the foreman of the laundry in failing to instruct him concerning the operation of the machine and to warn him of the dangers incident thereto. The rule of *respondeat superior* does not apply to the case.

*Semble,* that, as to such an inmate, the institution acts as one of the governmental agencies of the State, and is, therefore, not liable for negligence.

Appeal by the defendant, St. Vincent's Industrial School of Utica, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 11th day of February, 1902, upon the verdict of a jury for $1,100, and also from an order entered in said clerk's office on the 11th day of February, 1902, denying the defendant's motion for a new trial made upon the minutes.

The action was commenced on the 15th day of April, 1901, to recover damages for injuries sustained by the plaintiff on the 14th day of September, 1900, while assisting in operating a mangle in

the defendant institution, alleged to have been caused through the negligence of the defendant.

*William Kernan,* for the appellant.

*Henry E. Miller,* for the respondent.

McLENNAN, J.:

On the 19th day of August, 1900, the plaintiff, who was then about fifteen years of age, was arrested in the city of Syracuse, N. Y., upon the charge of having committed the crime of petit larceny. He was arraigned before the police justice of said city; was duly tried and convicted, and committed to the custody of the defendant, which is located in the city of Utica, N. Y.; was thereupon taken by a police officer of the city of Syracuse to the defendant institution; was received by it and detained until the 15th day of September, 1900, the day after the accident, when he was discharged.

The defendant, at all the times in question, maintained a laundry for the purpose of laundering the clothing of its inmates and other articles required about the institution, and used in connection therewith a mangle propelled by steam, which the plaintiff was compelled to assist in operating. The mangle consisted of four iron rollers about six feet long, one a large uncovered roller twenty-four inches in diameter, heated by steam, and three about six inches in diameter which were wound or padded with several thicknesses of woolen cloth, and which were placed above the large one in such a manner that the surface of each of the small rollers came in contact with the surface of the large one. The axles of each were set in boxes in the frame of the machine at either end, and were thus held in place. When the mangle was being operated all the rollers revolved, and the three small ones were pressed tightly against the surface of the large one. When articles of any considerable size were to be ironed they were placed on a feeding table attached to the side of the machine, were pushed against the large roller, were carried on its surface under the small rollers, and were then dropped on a receiving table attached to the opposite side of the mangle. The articles were there folded and placed on a table near by.

The evidence on the part of the plaintiff tends to show that on the 14th day of September, 1900, sheets were being ironed; that he

was directed by a Mr. Hughes, who was foreman of the laundry, to stand at the receiving table, take the sheets from the mangle, fold them and put them away; that while so engaged one of the sheets, instead of dropping on to the receiving table, stuck to the small roller nearest to the table, and commenced to wind about it, which would be liable to tear or burn the sheet; that thereupon the plaintiff, as he had previously been directed to do, put his hand between the two small rollers next to him, which were six or seven inches apart, to withdraw the sheet; that in so doing his hand was caught between one of the small rollers and the large one, and was severely burned and crushed, which is the injury for which he seeks to recover.

It is urged on behalf of the plaintiff that the mangle in question was defective; was not reasonably safe or suitable for doing the work for which it was intended, and, therefore, that the defendant was guilty of negligence. Evidence was given to the effect that frequently, previous to the accident, trouble had been experienced in operating the mangle, because of the fact that articles when being ironed would stick to the padded roller next to the receiving table, wind around it and make it necessary for the person operating the machine to put his hand between it and the roller next above in order to loosen and pull out such articles, all to the knowledge of the foreman or person in charge of the laundry.

Evidence was also given to the effect that if " tapes " or narrow belts of cloth were placed around all three of the small rollers about a foot and a half apart, that is, if the three rollers were encircled by one set of belts, articles being ironed would not stick to the padded rollers and would not wind around the lower one, but would drop to the receiving table as intended; that the use of such an appliance would have prevented the difficulty which caused the accident in question. Also, that if a guard were placed upon the machine, extending from one end of the mangle to the other in front of the two lower small rollers, the danger of the operator's hand being caught between the rollers would be eliminated.

Evidence was given which tended to show that it was feasible to put both devices upon the defendant's mangle, although no provision had been made for the same by the manufacturer; that they

were in use upon machines of that character in the locality and in different parts of the State, and that thereby the operation of such mangle was rendered much more safe, and that when so arranged an accident like the one in question was substantially impossible.

The evidence, however, conclusively shows that the mangle was purchased by the defendant from the Troy Laundry Machine Company, of Troy, N. Y., which manufactured it. Such company has a good reputation as makers of such machines; it annually manufactured and sold a large number precisely like the one in question, and without any attachment or provision being made for using either of the devices suggested. Such machines were in general use at the time of the accident, many of them being used in the principal laundries throughout the country and in the vicinity of defendant's institution. The mangle was patented in 1869, and some improvements on it in 1878. It was purchased by the defendant nine years previous to the accident; had been in almost constant use, was operated during the entire time by boys as young or even younger than the plaintiff, and no accident had ever before occurred in connection with its use. During all the time it had been operated by the defendant precisely the same as upon the day in question, and as it was intended by the manufacturers to be operated.

Upon those facts the defendant was not chargeable with negligence upon the ground that it failed to provide a machine reasonably safe and suitable for the work intended.

The master is not required to furnish for the use of his servant the best and safest machinery known. He is simply required to furnish such as is reasonably safe and suitable, and he discharges his full duty in that regard if he furnishes a machine in perfect repair, which is in general use and which efficiently does the work which it was intended to do. (*Bennett* v. *Long Island R. R. Co.*, 163 N. Y. 1.)

In *Hickey* v. *Taaffe* (105 N. Y. 26) the rule is stated as follows: "The duty incumbent upon an employer of furnishing a safe machine for his employe to work with, does not require the best possible appliances; his duty is discharged if he furnishes a machine reasonably safe and suitable, such as is ordinarily used in the business and which is in good repair."

The evidence in this case, however, was sufficient to raise a question of fact as to whether or not the defendant was guilty of negli-

gence because of the failure of the foreman of the laundry to instruct the plaintiff as to the proper manner of operating the mangle in question, and in failing to warn him of the dangers incident thereto. The plaintiff, at the time, was only fifteen years of age. He testified that he had never had any experience in the operation of machinery, and that he was given no instructions in regard to the operation of the mangle, or in any manner informed of the danger to be apprehended therefrom; that he was told by the foreman to put his hand between the rollers to withdraw any article which became caught, and that his attention was in no manner called to the danger of so doing. The evidence of the plaintiff upon this question was contradicted by the foreman and others, but the credibility of the witnesses was for the jury, and assuming that plaintiff's version was true, whether or not the defendant was guilty of negligence in that regard was a question of fact to be determined by the jury.

In the case of *Brennan* v. *Gordon* (118 N. Y. 489) the rule is stated in the head note as follows: "The duty devolves upon a master, before putting a servant, known to him to be unskilled, in charge of dangerous machinery, with the operation of which he is not acquainted, to instruct and qualify him for such new duty."

In the case of *Hickey* v. *Taaffe* (*supra*) the court said: "There is no doubt that in putting a person of immature years at work upon machinery which in some aspects may be termed dangerous, an employer is bound to give the employe such instructions as will cause him to fully understand and appreciate the difficulties and dangers of his position, and the necessity there is for the exercise of care and caution. * * * In placing a person of this description at work upon dangerous machinery, such person must understand, in fact, its dangerous character, and be able to appreciate such dangers and the consequences of a want of care, before the master will have discharged his whole duty to such an employe."

The evidence given on behalf of the plaintiff, if believed, establishes negligence on the part of the defendant within the rule adverted to, and the verdict of the jury in that regard, considering all the circumstances, ought to be accepted as final.

The same may be said in regard to the question of plaintiff's contributory negligence. He was not operating the machine of his

own volition.   He was so engaged in obedience to the command of the foreman, and according to his evidence he was directed to put his hand between the rollers when occasion required, precisely as he did when the accident occurred.   The jury found upon all the evidence that the plaintiff was not guilty of contributory negligence, and its finding upon that question should also be regarded as final. It may be said in this connection that there is no evidence which indicates that the foreman of the laundry or any of the other officers or agents of the defendant, who were in any manner connected with the transactions in question, were incompetent to discharge the duties assigned to them respectively or that the trustees of the defendant were negligent in their selection or because they were retained in its employ.   The verdict is not excessive.   No exceptions not involving the merits are urged as cause of reversal of the judgment appealed from.

The only remaining question to be considered is whether or not defendant is liable to the plaintiff for its own negligence or for the negligence of its officers, agents or employees, which resulted in injury to him.

The defendant was incorporated in the year 1886 pursuant to the statute which authorizes the incorporation of benevolent and charitable societies, being chapter 319 of the Laws of 1848, as amended by chapter 446 of the Laws of 1883.   The purpose of its incorporation, as stated in the certificate, was : " To maintain and support an industrial school and asylum for the sustenance and education of male orphan children."   Its incorporation was approved by the State Board of Charities.   The location and place of business of the defendant and of its institution was and is the city of Utica, N. Y.   The certificate provided : " The affairs and business of this society and association shall be managed by five directors," all of whom served without compensation ; but its immediate management was in charge of a charitable order known as the Christian Brothers.   Fifteen of them resided in the institution.   One of them was president of the board of directors and superintendent ; another was assistant superintendent. None of them received any compensation or salary for their work and labor.   The only persons connected with the institution who received any compensation for their services were those who had

charge of some department of work requiring technical skill, and those who were engaged to teach music, military tactics and the like. There were no shares of stock of the corporation, and no one could receive any financial benefit from the operations of the institution. It was largely supported by charity. At the time of the accident there were about 180 boys being detained in the institution, ranging from ten to sixteen years of age. They, including the plaintiff, were committed to it from various counties of the State by overseers of the poor, justices of the peace, police magistrates and judges, pursuant to section 713 of the Penal Code, which, among other things, provides: "A child under sixteen years of age committed for misdemeanor under any provision of this Code, must be committed to some reformatory, charitable or other institution authorized by law to receive and take charge of minors. And when any such child is committed to an institution it shall, when practicable, be committed to an institution governed by persons of the same religious faith as the parents of such child."

The board of supervisors of the county of Onondaga had entered into a contract by which the defendant agreed to receive boys from that county committed to it pursuant to the section of the Code referred to, and the county agreed to pay the sum of two dollars per week for each boy while in the defendant's custody. Similar contracts were made by other counties, some agreeing to pay a less sum per week, and some boys were received without compensation or any agreement under which compensation could be demanded. A regular school was maintained, which each boy was compelled to attend, and to devote a few hours each day to study. They were also required to work a portion of the time each day, either upon a farm near by or at some trade, such as operating knitting machines, tailoring, laundering, etc., for the purpose of instructing them in the methods of doing such work. The greater portion of the work thus done was for the immediate use of the institution. Vegetables for the inmates were raised upon its farm; their stockings and clothing were manufactured, and the laundering and other like work was done. In case products were raised or articles manufactured in excess of the requirements of the institution, they were sold to the general public, and the proceeds applied to its purposes. The yearly revenue thus obtained did not exceed $700 or $800.

All sums received from the various counties were also applied to the support and maintenance of the institution, and in addition a large sum was required, which was contributed by friends of the institution.

When we consider the manner and purpose of defendant's incorporation, the character and method of its work, it is apparent that it is a benevolent and charitable institution. Its existence serves no private purpose. Without any hope of financial reward, the time and energies of those engaged in its management are devoted to promoting the welfare of the unfortunate, and in aiding the State to care for and reform boys of tender years who have taken the first step in crime.

The fact that the defendant received compensation or partial compensation from the different counties from which its inmates were sent, and that it received a small sum annually from the sale of surplus farm products and manufactured articles, did not change its charitable character or render it a private business corporation. (*Hughes* v. *County of Monroe*, 147 N. Y. 49.) In that case the county of Monroe maintained an asylum for its insane, which was largely supported by funds raised by the county. It appeared, however, that, when possible, the expenses of maintenance were collected from the estates of lunatics in the asylum, or from those legally liable for their support, and that the asylum received a small sum annually from the sale of surplus farm products. It was held : " That the revenue derived from these sources was merely incidental, and tended to some little extent to lessen the public burden assumed by the county, and was in no sense a source of profit which could be deemed to render the operation of the asylum a private business."

Chapter 319 of the Laws of 1848, which was amended by chapter 446 of the Laws of 1883, under which the defendant was incorporated, clearly indicates the purpose of defendant's incorporation. Section 1 reads : " Any five or more persons of full age, citizens of the United States, a majority of whom shall be citizens of this State, who shall desire to associate themselves for benevolent, charitable, scientific or missionary purposes, may make, sign and acknowledge, * * * and file * * * a certificate," etc.

The law as amended provides : " And no written consent or

approbation shall be given by any justice of the Supreme Court for the organization and incorporation of any society under this act for the care or disposal of any orphan, pauper or destitute children, except upon the certificate in writing of the State Board of Charities approving of the organization and incorporation of such society, which certificate of such State Board of Charities shall be filed with the original certificate of such incorporation."

As we have seen, the State Board of Charities approved of the incorporation of the defendant for the "sustenance and education of male orphan children."

The case of *People ex rel. Mount Magdalen School* v. *Dickson* (57 Hun, 312) was a proceeding to compel by mandamus the county of Rensselaer to pay for the board and maintenance of certain girls committed to that institution from the county of Rensselaer. It was incorporated under the same law and substantially for the same purpose as the defendant, and its incorporation was approved by the State Board of Charities. It appeared that the institution in that case had in its charge certain girls committed to it by certain committing magistrates. It was held that the relator was a charitable institution. The purpose of the incorporation of the relator in that case and of the defendant in the case at bar were almost identical, and there was substantially no difference in the method of managing the two institutions. If the former was a benevolent and charitable institution, within the meaning of the statute, the same character pertains to the defendant.

In the case of *Van Tassell* v. *Manhattan Eye & Ear Hospital* (15 N. Y. Supp. 620) it appeared that the defendant was incorporated under chapter 584 of the Laws of 1869, " for the purpose of treating indigent persons suffering from diseases of the eye and ear." It was held that the defendant was a charitable corporation, although it appeared that patients, when able to do so, were required to pay for their treatment.

In the case of *People ex rel. New York Institution for Blind* v. *Fitch* (154 N. Y. 14) it was held that the defendant was a charitable institution, and that it is not necessary that an institution should be wholly charitable to fall within that definition ; that it is enough if an institution is partly charitable in its character and purpose, even if its purpose is partly educational. It was further said that the

word " charitable," as used in the provisions of the Constitution and the statutes, should be given its usual and ordinary meaning. In that case the defendant received some pupils whose education and maintenance were paid for by their parents or guardians, but many of the inmates were indigent children whose education and maintenance were paid for by the different counties and cities of the State from which they were sent, and it was held that the defendant was a charitable institution. The only question involved was whether or not the defendant was such a charitable institution as was subject to the visitorial powers of the State Board of Charities; and so in the case of *People ex rel. Board Charities* v. *New York Soc. P. C. C.* (161 N. Y. 233). In both of those cases it was recognized that certain of the charitable institutions were subject to such visitation, and that others were not. In the case at bar the question is not whether the defendant belongs to one or the other class of such charitable institutions, but whether it belongs to either, to wit, whether or not it is a charitable corporation.

Many other cases might be cited in which it has been held that corporations of the character of the defendant, existing for substantially the same purpose, and conducted in the same manner, are charitable corporations.

The case of *People ex rel. Board Charities* v. *New York Soc. P. C. C.* (*supra*), cited by counsel for the respondent, is not authority for the proposition that the defendant is not a benevolent and charitable institution. The question involved in that case was whether or not the State Board of Charities was entitled, as matter of right, to visit the buildings and grounds, and to inspect the books and papers of the defendant, and to compel it to give full information concerning its operations. It was held that the defendant in that case was not one of the institutions over which, under the statutes, the relator had visitorial powers; and it was also held that it was not such a benevolent or charitable institution as was intended to be included within the provisions of article 8, sections 11 and 14, of the Constitution; but in the case at bar, by the very statute under which the defendant was incorporated (Laws of 1848, chap. 319, as amd. by Laws of 1883, chap. 446) the State Board of Charities is given authority to determine whether such an institution as the defendant should or should not be incorporated,

and, as we have seen, they exercised that power, and then and not till then was the defendant authorized to receive children into its institution.

That the defendant and similar institutions throughout the State, are benevolent and charitable institutions, within the meaning of the statute, has been almost universally recognized by committing magistrates, overseers of the poor and judges who have committed children guilty of minor offenses to such institutions, as required by section 713 of the Penal Code. The places of detention of such juvenile delinquents would indeed be limited if the doors of institutions like the defendant were closed to them. The language of the Penal Code is that a child " * * * committed for misdemeanor * * * must be committed to some reformatory, charitable or other institution authorized by law to receive and take charge of minors." The text writers, in defining benevolent and charitable institutions, describe the defendant with substantial accuracy. The many statutes and sections of the Penal Code relating to the subject cannot be harmonized or made intelligible if institutions such as the defendant are to be regarded and treated otherwise than as benevolent and charitable institutions.

We have seen that the negligence which resulted in injury to the plaintiff was the negligence of an employee, either of the superintendent or of the foreman of the laundry, in failing to properly instruct the plaintiff as to the operation of the machine, and in failing to warn him of the dangers incident thereto; and that the defendant was not negligent in furnishing the mangle in question, and in causing it to be operated in the condition in which it was.

The defendant being a benevolent and charitable corporation, the law is well settled in this State that the rule of *respondeat superior* does not apply to it.

*Van Tassell* v. *Manhattan Eye & Ear Hospital* (*supra*) was an action to recover damages for injuries sustained through the negligence of defendant's physician in performing an operation upon the plaintiff, or in the negligent treatment of the plaintiff afterwards by one of the nurses. It was held that the plaintiff could not recover. The court said: " The defendant is not liable except for the omission to give due care to the selection of its skilled employes, surgeons and others."

*Joel* v. *Woman's Hospital* (89 Hun, 73) was an action to recover damages for injuries alleged to have been sustained through the negligence of the defendant.   It appeared that the plaintiff in that case was a patient in defendant's hospital; that while there she was placed under the influence of an anæsthetic during the performance of an operation; that after the operation she was placed in a bed which had been heated with bottles of hot water.   Through the negligence of one of the nurses one of the bottles was not removed, and it came in contact with plaintiff's foot and severely burned it. It appeared that the defendant was a charitable corporation, and it was held that no recovery could be had, the court approving of the decision in the *Van Tassell Case* (*supra*) and again reiterating the rule "that the defendant was not liable except for the omission to exercise due care in the selection of its surgeons and other employees."

The same question was again considered in *Collins* v. *New York Post Graduate Medical School* (59 App. Div. 63).   In that case the defendant was incorporated for "the establishment of a school for the further instruction of persons already possessing the degree of doctor in medicine, and a hospital for the treatment of diseased and injured persons in the city and county of New York."   It had no capital stock, its funds being derived from public and private donations, from devises and bequests, the board of paying patients and tuition fees.   The city of New York also appropriated annually the sum of $30,000 to the institution.   The officers, directors, faculty and physicians rendered their services gratuitously, and any one might receive medical and surgical treatment free.   No charge was made for such services, but if any patient desired to make compensation for the same it was accepted.   The plaintiff entered defendant's institution and an operation was performed upon him.   The evidence tended to show that the operation was improperly and negligently performed.   It was held, nevertheless, that the plaintiff could not recover.   The court said: "However opinions may differ on the question of the policy of exempting charitable institutions from the ordinary rule of *respondeat superior*, the law is too well settled in this State to permit a recovery against the institution for the wrong committed by the surgeon who operated upon the plaintiff gratuitously."

The *Joel* and *Van Tassell* cases (*supra*) are cited with approval.

The same rule is laid down by the Massachusetts courts. In *McDonald* v. *Mass. General Hospital* (120 Mass. 432) the head note is as follows: " A corporation established for the maintenance of a public charitable hospital, which has exercised due care in the selection of its agents, is not liable for injury to a patient caused by their negligence, nor for the unauthorized assumption of one of the hospital attendants to act as a surgeon."

The court said, per DEVENS, J.: " If there has been no neglect on the part of those who administer the trust and control its management, and if due care has been used by them in the selection of their inferior agents, even if injury has occurred by the negligence of such agents, it cannot be made responsible. The funds intrusted to it are not to be diminished by such casualties, if those immediately controlling them have done their whole duty in reference to those who have sought to obtain the benefit of them. There was no attempt to show that the trustees had in any respect failed in the performance of their duty. If they had made suitable regulations, had selected proper persons to fill the position of surgeons, then, whether those persons neglected to perform their duty, or whether another person, as the house pupil, not selected for the office of surgeon, assumed without authority to act as such, and injury has thus resulted, the plaintiff has no remedy against the corporation."

In the case of *Benton* v. *Trustees of Boston City Hospital* (140 Mass. 13) it was held that no action could be maintained against the defendant by a person who had entered the hospital building on business, for personal injuries occasioned by reason of the unsafe condition of the covering of the stairs over which he was passing in leaving the building, although such condition was caused by the negligence of the superintendent of the hospital.

The rule adopted by the courts of Pennsylvania is stated in the head note in *Fire Insurance Patrol* v. *Boyd* (120 Penn. St. 624) as follows: " When a public corporation has no property or funds but what have been contributed for a special, charitable purpose, it would be against all law and all equity to apply the trust funds thus contributed to compensate injuries inflicted by the negligence of its agents and servants."

The rule as stated in *Glavin* v. *Rhode Island Hospital* (12 R. I.

411), and in some of the other States, seems to be at variance with the rule as laid down in the cases above referred to; but we have not been able to find any decision made by the courts of this State which is not in harmony with the authorities cited.

In the case of *Ward* v. *St. Vincent's Hospital* (39 App. Div. 624), cited by respondent's counsel, in which it was held that the defendant in that case was liable for the negligent treatment of the plaintiff by its surgeons, the decision was placed squarely upon the ground that the defendant entered into a contract with the plaintiff to furnish her with a skillful, trained and competent nurse, for a stipulated sum per week; that the defendant was competent to make such contract, and that for its failure to perform the duties thereby imposed the plaintiff was entitled to recover the damages which resulted therefrom.

Other cases of similar import might be cited, where it has been held that certain charitable corporations are competent to make specific contracts for the care of individuals, and that if injury results because such contract is negligently performed, the corporation is liable; but except in such cases, so far as we have been able to discover, it has been universally held by the courts of this State that a charitable corporation is not liable to its inmates for injuries resulting to them through the negligence of its servants or agents. While the rule may cause hardship in individual cases, we think the reason for it is sound, and that it should be adhered to. Any other would make it possible to devote the property of a charitable corporation to an inmate who was so unfortunate as to receive injury through the negligence of an agent or employee of the institution, no matter how careful the trustees might have been in his selection, and the funds contributed by the philanthropic for a particular charitable purpose might thus be devoted to a purpose in no manner intended by them. We think public policy requires, in the absence of statutory enactment, that the courts adhere to the rule that a charitable corporation is not liable for injuries sustained by its patients or inmates, resulting from the negligence of the employees, agents and servants of such corporation, when it has exercised due care and caution in their selection.

It is urged by appellant's counsel that the defendant, at the time of the accident, and while in charge of the plaintiff, was acting as

one of the governmental agencies of the State, and, therefore, was not liable for its negligence.   There is much force in the proposition. For the time being the defendant institution was, in effect, one of the prisons of the State where certain offenders, including the plaintiff, might be detained.   It cannot be important that the defendant was not compelled by statute to receive the plaintiff or others of his class into the institution.   Such discretion is vested in the managers of many of the reformatory institutions of the State.   If the plaintiff had been injured while in one of the cells of the city hall in the city of Syracuse, or had been injured by one of the city's servants, it would not be claimed that a recovery therefor could be had against the municipality, neither would the county of Onondaga have been liable if he had been committed to its penitentiary, and while there had been injured through the negligence of its servants.

The rule is stated in the case of *Hughes* v. *County of Monroe* (*supra*) substantially as follows: That where power is granted to a municipal corporation as one of the political divisions of the State, not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens, the corporation is not liable for non-user, nor for misuser by its public agents.   And in the same case it is said that this rule is applicable to counties which are mere political divisions of the State, and, at most, only *quasi* corporations.

In the case of *Eddy* v. *Village of Ellicottville* (35 App. Div. 256) it was held: "A village, in its maintenance and care of the village jail, acts in a governmental and not in its corporate capacity; and where a prisoner, while confined in an unheated room of the jail, the windows of which are broken, contracts a severe cold, terminating in pneumonia, from which he dies, the village is not liable in damages to his administratrix for its failure to keep the jail in a suitable condition." (*Doty* v. *Village of Port Jervis*, 23 Misc. Rep. 313; *Maxmilian* v. *Mayor*, 62 N. Y. 160; *Fire Insurance Co.* v. *Village of Keeseville*, 148 id. 46.)

Many other cases decided by the courts of this State to the same effect might be cited.   The State is not liable for an injury sustained by an inmate of any of its prisons, reformatories or other institutions, which is the result of negligence, and it is difficult to understand, upon principle, why an institution like the defendant

which is virtually converted into a prison or reformatory under the laws of the State, for the purpose of caring for its criminals, should be liable for injuries sustained by a person committed to its custody, which is also the result of negligence.

It, however, is unnecessary to determine whether the rule thus invoked by the appellant is or is not applicable to the case at bar, in view of the fact that we have concluded that the defendant is not liable for the accident in question, which was the result of the negligence of its agents and servants, because of the fact that it is a charitable corporation, and because it is apparent that the evidence relating to the character of the defendant cannot be materially changed.

It follows that the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide event.

SPRING, WILLIAMS and HISCOCK, JJ., concurred; DAVY, J., not voting.

Judgment reversed and new trial ordered, with costs to the appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.