(Surrogate's Court, Saratoga County. January, 1910.)

1. TAXATION (§ 876*)—INHERITANCE TAX—EXEMPTIONS—"CHARITABLE AND OTHER PURPOSES."

Though patients at the Craig Colony for Epileptics work on its lands to grow foods or to make products which may be sold by the state to furnish funds to purchase necessities for the support of the colony, it is nevertheless conducted exclusively for "charitable and other purposes" within Tax Law (Consol. Laws, c. 60) § 221, so that a legacy to it is exempt from the transfer tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693, 1694; Dec. Dig. § 876.*

For other definitions, see Words and Phrases, vol. 2, pp. 1074–1088; vol. 8, p. 7600.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TAXATION (§ 876*)—INHERITANCE TAX—BENEVOLENT CHARITABLE CORPORA-
TIONS—EXEMPTIONS.

The Woman's Christian Temperance Union falls within the class of
benevolent charitable corporations exempted from payment of the trans-
fer tax under Tax Law (Consol. Laws, c. 60) § 221.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693, 1694; Dec.
Dig. § 876.*]

3. CHARITIES (§ 1*)—DEFINITION—"CHARITABLE"—"CHARITY."

"Charitable" in its usual sense means pertaining to almsgiving or relief
of the poor, and in a legal sense "charity" has been defined as a gift to
be applied lawfully, among other things, for the benefit of an indefinite
number of persons, by bringing their hearts under the influence of educa-
tion or religion, relieving their bodies from disease or suffering.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 1; Dec. Dig.
§ 1.*

For other definitions, see Words and Phrases, vol. 2, pp. 1074–1088; vol.
8, p. 7600.]

In the matter of the appraisal of the estate of Mary R. Moore, de-
ceased. From an order fixing the amount of tax on certain legacies,
certain legatees appeal. Reversed.

John H. Burke, for executors.
Burton D. Esmond, for Comptroller.

OSTRANDER, S. This is an appeal from an order of the Sur-
rogate's Court of Saratoga county, made upon the report of the county
treasurer, fixing the value of certain legacies under the will of de-
ceased and the amount of tax payable thereon, pursuant to article 10
of the tax law (Consol. Laws, c. 60). Said order was made June 15,
1909; and the portion thereof appealed from is that part which ad-
judges a tax to be payable upon legacies bequeathed in the will of
deceased to Craig Colony for Epileptics and to the Woman's Christian
Temperance Union of Ballston Spa. The sole question urged upon
this appeal is whether such legacies are taxable or exempt under sec-
tion 221 of the tax law.

Mary R. Moore died December 15, 1908, leaving a will which was
probated March 20, 1909. By article 36 of her will testatrix gave to
the board of managers of the Craig Colony for Epileptics $20,000 in
trust "to be invested by said board and forever kept invested in such
securities as said board may deem proper, the interest and income
arising therefrom to be used and applied to the uses, purposes and ob-
jects of said colony," and by the residuary clause of said will said
board of managers of said colony was given one-fourth of her residu-
ary estate upon the like trust and for like objects. By the thirty-
eighth clause of her will deceased gave $1,000 to the Woman's Chris-
tian Temperance Union of Ballston Spa, N. Y., in trust to keep the
same invested and to use the income for the benefit, support, and
maintenance of said union.

It is conceded that those legacies are taxable, unless they are exempt
under the provisions of section 221 of the tax law. That section, so
far as applicable to this case, provides that:

"Any property devised or bequeathed to any person who is a bishop, or to
any religious, educational, charitable, missionary, benevolent, hospital or in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

firmary corporation, including corporations organized exclusively for bible or tract purposes, shall be exempted from and not subject to the provisions of this article. * * * But no such corporation or association shall be entitled to such exemption if any officer, member or employee thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operation thereof, except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof for any such avowed purpose be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association, or for any of its members or employees, or if it be not in good faith organized or conducted exclusively for one or more of such purposes."

It is not seriously urged that the Craig Colony is maintained as a pretended charitable institution for the purpose of making profits and evading the tax law; nor that any officer, member, or employé thereof received any pecuniary profit, except reasonable compensation for services in effecting its purposes. And we come to the question: Is the Craig Colony an "educational," "charitable," "benevolent," "hospital," or "infirmary" corporation; and, if so, is it organized or conducted exclusively for one or more of such purposes?

Craig Colony was organized under a special act—chapter 363, Laws 1894. It has been continued under chapter 546, Laws 1896, and the state charities law (chapter 55, Consol. Laws). The objects of the colony, as stated in the statute, are "to secure the humane, curative, scientific and economical treatment and care of epileptics, exclusive of insane epileptics"; and in furtherance of this design the statute provides for the furnishing of land, buildings for dwellings, for an infirmary, schoolhouse, chapel, and workshops for the teaching and productive prosecution of trades and industries. It is contended by the Comptroller that because means are to be provided for productive prosecutions of trades and industries, and because it is elsewhere (sections 10, 11) declared that the intent of the act is that the colony shall be self-supporting as far as possible, the language indicates that the colony was not organized exclusively for one or more of the purposes, educational, charitable, benevolent, hospital, or infirmary, which would entitle the legacy to exemption, but in part for profit. This contention does not seem well founded. The exclusive object is to secure treatment and care of a class of unfortunates, and, incidental to such care, is provision for such productive use of their labor as will serve to bear a part of the expense. That the object of the colony is not gain is evident from the further provisions of the acts creating it.

All its property is owned by the state. The board of managers are appointed by the Governor and confirmed by the Senate, and serve without compensation. They are authorized to receive and hold, "in trust for the state," property to be applied to the maintenance and education of epileptics and the general uses of the colony. The treasurer is required to deposit all moneys of the colony under direction of the Comptroller, and to account monthly to him. Different classes of patients are received. (a) State patients, epileptics resident in the state who are unable to provide for their support in the colony. (b) Private patients, who are received for such compensation as the managers deem just, in case they can be accommodated. (c) State pa-

tients, received upon application of local poor authorities, whose duty it is made to place epileptics coming under their charge in the colony. All state patients are gratuitously supported by the state, except that the counties from which state patients are received are required to pay $30 per year for clothing for each patient. In the reception of patients, preference is required to be given to indigent patients, after them to patients able to pay only in part, and after them to patients able to pay in full the expense of their maintenance. In case the number of applicants for admission as state patients exceeds the accommodations, admission is apportioned among the counties according to their dependent epileptic population. Annual reports to the state board of charities are required to be made, and the state board is required to certify to the Legislature what appropriations are necessary for the support of the institution.

Briefly, the scheme of the colony is to secure treatment of sane epileptics; by employing them to make them, as nearly as possible, self-supporting, and for the balance of the expense to call upon the state treasury. Donations in aid of this object are received; and, so far as there may be accommodations after caring for indigent patients, other patients are treated at the cost of such service. The fact that the services of patients are utilized upon its lands to grow foods, or to make products which may be sold by the state and the proceeds used to purchase necessities for the support of the colony, does not prevent the organization or conduct of the colony from being exclusively charitable, educational, benevolent, if its lawful operations and objects bring it within those descriptions. "Charitable," in its usual and ordinary sense, means pertaining to almsgiving or relief of the poor, springing from charity, or intended for charity. Cent. Dict. In a legal sense charity has been defined as a gift to be applied lawfully, among other things, for the benefit of an indefinite number of persons, by bringing their hearts under the influence of education or religion, relieving their bodies from disease or suffering. See "Charity" as defined in "Words and Phrases." The Craig Colony's objects, conduct, and organization are aptly described in the remark of Judge Haight relative to the Vassar Brothers Home for Aged Men, 127 N. Y. 1, 14, 27 N. E. 394, 398:

"It possessed no element of private or corporate gain, and whatever income it may derive is devoted to the charity for which it was incorporated."

In People ex rel. N. Y. Institute for Blind v. Fitch, 154 N. Y. 14, 33, 47 N. E. 983, 988, 38 L. R. A. 591, Judge Martin said:

"The relator must be regarded as a charitable institution so far as it clothes, educates, and maintains indigent pupils at public expense or by donations from individuals. So far as it educates pupils who pay for their tuition, board, and maintenance, it is not to be regarded as a charitable but only as an educational institution."

Craig Colony under its charter duties performs acts, charitable, educational, benevolent, hospital, and infirmary in their nature; and its energies are directed exclusively to such acts.

Within the foregoing authorities and the authority of Corbett v. St. Vincent Industrial School, 79 App. Div. 334, 79 N. Y. Supp. 369

(affirmed 177 N. Y. 16, 68 N. E. 997), Smith v. Havens Relief Fund Society, 44 Misc. Rep. 594, 90 N. Y. Supp. 168, Id., 118 App. Div. 678, 103 N. Y. Supp. 770, Matter of Shattuck, 193 N. Y. 446, 452, 86 N. E. 455, and following the holding of Judge O'Brien in People ex rel. Board Charities v. N. Y. Society Prevention Cruelty Children, 162 N. Y. 429, 431, 56 N. E. 1004, 1005, that a charitable institution subject to visitation by the state board of charities "must be one that in some form or to some extent receives public money for the support and maintenance of indigent persons," I feel no hesitation in holding Craig Colony to be such·a corporation that legacies to it are exempt from the transfer tax under the provisions of section 221 of the tax law.

While it is not necessary in reaching this conclusion to refer to other legislation it is significant that the Legislature in making appropriations has classed this corporation and appropriated moneys for it as a "charitable institution." Laws 1903, c. 599; Laws 1904, c. 729; Laws 1905, c. 700; Laws 1906, c. 686; Laws 1907, c. 578; Laws 1908, cc. 466, 469.

I do not think the Legislature ever intended to tax benevolently inclined people for the privilege of making legacies designed to relieve the state of its burdens. No more effectual way of stopping such benevolence could be well devised. While the courts have no power to prevent the Legislature from establishing such a greedy and foolish policy, they should not by construction impute such an intention in cases where it does not clearly appear, nor, by hairsplitting constructions of the statute, entrap unwary persons who desire to limit their benefactions to the state by the amount set out in the legacy. So much of the order appealed from as imposes a tax upon the gifts to the Craig Colony should be reversed.

The Woman's Christian Temperance Union is incorporated and its certificate of incorporation states the purposes of its incorporation to be "to promote Christian Temperance work and the uplifting of the youth in the community." The affidavit of its president says that its work has been to discourage the use and traffic of liquor, the use of tobacco, cigarettes, opium, and morphine and to give special attention to evangelistic work; that it arranges religious services at places where no meetings are otherwise held, such as the county almshouse and county jail; that the society depends entirely on charity for its support and its officers receive no compensation for their services. I think this society falls within the class of benevolent, educational, charitable corporations intended to be exempted from payment of the transfer tax under section 221 of the tax law (Matter of Moses, 60 Misc. Rep. 637, 113 N. Y. Supp. 930); and the order imposing a tax upon this legacy should be reversed.

Decreed accordingly.