### In re ARNOT'S ESTATE.

SOHMER, Comptroller, v. RATHBONE et al.

(Supreme Court, Appellate Division, Third Department. June 28, 1911.)

1. TAXATION (§ 204*)—EXEMPTIONS—CONSTRUCTION.

The principle that statutes exempting from taxation must be strictly construed against a claimant applies where an exemption is claimed from a general burden of taxation common upon all property, or, upon persons generally, and, to subject a special class to a special tax, clear legislative intention must be shown.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 321, 322, 325, 332; Dec. Dig. § 204.*]

2. TAXATION (§ 242*)—TRANSFER TAXES—EXEMPTIONS—"EDUCATIONAL CORPORATION."

A corporation organized to receive a testamentary gift to maintain an art gallery to which the public shall have free access under reasonable regulations, and to establish and maintain a free public reference library, is an educational corporation within Tax Law (Consol. Laws 1909, c. 60) § 221, exempting such corporations from transfer taxes.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 394–403; Dec. Dig. § 242.*

For other definitions, see Words and Phrases, vol. 3, p. 2317.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Surrogate's Court, Chemung County.

In the matter of the appraisal of the estate of Matthias H. Arnot, deceased, for the purpose of taxation. From an order of the surrogate (130 N. Y. Supp. 197) refusing to tax certain transfers under the transfer tax act, William Sohmer, Comptroller of the State of New York, appealed adversely to James B. Rathbone and another, executors. Affirmed.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

William Law Stout, for appellant.

Stanchfield, Lovell, Falck & Sayles, for respondents.

BETTS, J. Matthias H. Arnot, a wealthy resident of the city of Elmira, Chemung county, died February 15, 1910, testate. He left various bequests and devises to relatives, friends, individuals, and corporations. Proceedings were had in the Surrogate's Court in the usual manner to fix the amount of the taxable transfer tax on said transfers of property due to the state. The surrogate held that certain devises, bequests, and transfers by his will to a corporation to be formed, known as the "Arnot Art Gallery," were not taxable, and from that decision this appeal has been taken by the comptroller.

In briefly giving reasons for the decision of this court, three sections of that will are of principal importance. They are as follows:

"Fourth. I bequeath to the Board of Education of the City of Elmira, New York, the sum of three thousand ($3,000) dollars which sum said Board of Education of the City of Elmira, New York, or the City Chamberlain of said City as the law may provide, shall invest and keep invested, and the income each year therefrom shall be expended by said Board of Education for pictures or other objects of artistic nature and value appropriate and to be placed upon the walls of the school-houses, including the Elmira Free Academy of said City of Elmira. * * *

"Twenty-Third. I direct my executors hereinafter named and appointed forthwith and while my sister Fanny Arnot Haven and my niece Marion Arnot Wickes are or the survivor of them is living, to cause to be created and organized under the proper statute or statutes, of the State of New York, a corporation with the name Arnot Art Gallery, with capacity, and right to receive, take and hold, in the manner and for the uses, and purposes herein in a general way set forth, the property and that part of my estate I do hereinafter by this will give, devise and bequeath to said corporation. If for any reason said corporation may not lawfully have as its name Arnot Art Gallery it shall have such similar name approved by my said executors as it may lawfully bear. I give, devise and bequeath to said corporation so to be formed and created, the following described real estate and personal property, that is to say: All that part of the land and the buildings thereon now constituting my residence and known as number two hundred and thirty-five Lake street, in the City of Elmira, New York, lying between the western line of said Lake street and line parallel with said western line of said Lake street and west therefrom the distance of two hundred twenty-two and sixty-seven-one hundredths feet (222.67). Said land so devised is laid down upon a map attached to this will, and marked residence plot as parcels or part 'B', 'C', 'D', 'E'; also the following described or mentioned personal property, each and every of the paintings, engravings, etchings, photogravures, photographs, pictures and objects of art within my said residence, two glass cases and their contents being curios, and all curios elsewhere within my said residence, two busts in marble one of which is of my father John Arnot, the other designated the 'Wept of Wish-Ton-Wish,' and all statuary within my said residence, all vases and bronzes therein, the two clocks in present gallery of

my said residence and the clock in the front parlor thereof; all the printed books, pamphlets and literary productions therein, cabinets, tables or stands, in or upon which any of the foregoing mentioned articles are kept or placed. It is my intention and desire that my executors construe the gift and devise of this twenty-third paragraph broadly and deliver to said corporation all articles of artistic or literary nature, appropriate to the purposes of said corporation as herein set forth; also the sum of Ten thousand ($10,000) dollars; also the sum of Two hundred thousand ($200,000) dollars to be paid or delivered to said corporation in bonds or securities of my estate at their par value. I empower and direct my said executors to hold, possess, care for, protect and manage all of the real estate and personal property mentioned and described in this paragraph twenty-third of my will, until the creation of the corporation as I have herein directed and thereupon to transfer and deliver to said corporation the entire of the said real estate and personal property and therewith such instruments of conveyance, assignment and transfer as they shall be advised are necessary or desirable.

"The purpose of this gift and devise effected by this paragraph twenty-third is or may be two-fold; The primary and fundamental purpose thereof is to establish, under the perpetuity of corporate ownership and management, and endow an institution which shall have the City of Elmira, and my residence therein as its seat and permanently own, possess, protect and continually add to a collection of objects of art of real merit and enduring worth and interest, to which the public shall have, under reasonable regulations, free access. The secondary purpose thereof is to establish and endow a library, exclusively for reference and not to any extent for circulating uses which owned, maintained and enlarged by said corporation shall be accessible and free, under proper regulations, to all who may seek aid therefrom. It may be however, that the income from said corporation will be inadequate for the two purposes. The corporation shall be guided and controlled by the principle that said primary purpose is paramount, but that the secondary purpose is very desirable and shall be carried out and into effect whenever and as practicable.

"Said sum of Ten thousand ($10,000) dollars, will, I expect, be used by said corporation in making the alterations in my said residence the purposes of said corporation may require, and for the general purposes of the corporation until the income from the endowment fund is available. Said sum of two hundred thousand ($200,000) dollars shall be, and said corporation shall at all times treat said sum as an endowment fund. I direct that the entire thereof be kept perpetually invested, conservatively and judiciously by said corporation, and the interest and income therefrom be used by said corporation for its lawful purposes as herein stated and expressed. ＊ ＊ ＊

"Twenty-Eighth. It is my will and I direct that any transfer, legacy or succession tax imposed or payable on any bequest or devise made by this will shall be paid by my executors hereof out of my residuary estate and shall not be charged against such bequest or devise."

Section 25 as finally settled by the codicil bequeaths and devises the residuary estate of the deceased, and it is therein provided that various remainders of large sums left to individuals shall and others may go to the endowment fund created by the said paragraph 23.

Thus it will be seen that a large property is to pass to the Arnot Art Gallery immediately upon its being incorporated, and that much other property will eventually become a part of this fund under the provisions of this will. The transfer of these various properties are claimed to be exempt from the operation of the tax law as to taxable transfers by the provision of section 221 of the tax law, which is as follows:

"But any property devised or bequeathed to any person who is a bishop or to any religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation, including corporations organized exclusively for bible

or tract·purposes, shall be exempted from and not subject to the provisions of this article."

[1] The surrogate holds that this corporation, Arnot Art Gallery, is an educational one. The Comptroller claims that it is not, and that is the contention here. The Arnot Art Gallery has been 'incorporated since the appraisal here by "An act to incorporate Arnot Art Gallery," which became a law March 16, 1911, with the approval of the Governor.

The respondent relies to maintain that the Arnot Art Gallery is an educational corporation principally on the following cases: Matter of Mergentime, 129 App. Div. 367, 113 N. Y. Supp. 948, affirmed 195 N. Y. 572, 88 N. E. 1125, on opinion below, Matter of Moses, 138 App. Div. 525, 123 N. Y. Supp. 443; Matter of Moore, 66 Misc. Rep. 116, 122 N. Y. Supp. 828.

The Matter of Mergentime, supra, was an appeal by the Metropolitan Museum of Art from a decree of the Surrogate's Court of New York county assessing a tax upon a legacy of $1,000 to the Metropolitan Museum of Art. In a very long and well-considered opinion, Justice Ingraham holds, reversing the surrogate, that the legacy is not taxable. It appears from his opinion that the Metropolitan Museum of Art was incorporated "for the purpose of establishing and maintaining in said city a museum and library of art, of encouraging and developing the study of the fine arts, and the application of arts to manufacture and practical life, of advancing the general knowledge of kindred subjects, and to that end (namely, encouraging and developing the study of the fine arts) of furnishing popular instruction and recreation." The court continues:

"Thus the objects for which the institution was established are directly connected with encouraging and developing the study of the fine arts and the application of arts to manufacture and practical life, and for advancing the general knowledge of kindred subjects, and to that end to furnish popular instruction and recreation. There is no object of furnishing a place for recreation disconnected with the study of these subjects and of advancing the general knowledge of kindred subjects, and it seems to me clear that, under this provision of its charter, the corporation would not be justified in establishing any museum or library that had no connection with the study and advancing of general knowledge of these specified arts. The whole object of this association is directly connected with higher education, that it is organized for no other purpose, and, so far as appears by the record, it has consistently used the moneys and property given to it solely for the purpose of encouraging and developing the study of the fine arts and advancing the general knowledge of kindred subjects. To say that this is not an educational corporation would, it seems to me, justify the directors in changing the museum into a scheme for personal profit, rather than an institution which is strictly devoted to the higher education. That the establishment of this institution has been of incalculable benefit to the city and state of New York is known to us all, and I think can justly be inferred from the contributions that have been made to it under the direct authority of the Legislature by the city of New York. The city has furnished expensive and imposing buildings upon its most important public park, and contributed $150,000 of the public money a year to the maintenance of the institution. The corporation itself has applied for that purpose, in addition to the contribution by the city, over $50,000 a year; and the corporation offers to educational institutions, including the public schools of the city of New York, both to teachers and students, advantages of study of its exhibits and the hearing of lectures upon art and kindred subjects. That the state should attempt to tax the contribu-

tions to this corporation to be used in supplying the deficiencies in the expense of its maintenance over and above that contributed by the city for the institution, and which is so largely maintained by the city for the benefit of citizens and the rest of the people of the state, is certainly surprising, and no such intention should be inferred except upon the clearest evidence."

The comptroller relies upon the general principle that statutes of exemption from taxation must be strictly construed against the person or corporation claiming it, and, if the exemption is not plainly expressed, it will not be presumed. But this principle has been generally applied in cases where an exemption is claimed from the general burden of taxation, which is common upon all property or upon the people generally; and where a tax imposed is not such a common burden, but a special tax reaching only to special cases, and affecting only a special class of persons, the rule is that to subject such a class of persons to the tax requires a clear legislative intention. This qualification of the rule has been applied by the Court of Appeals to the transfer tax. Matter of Harbeck, 161 N. Y. 211, 55 N. E. 850; Matter of Fayerweather, 143 N. Y. 114, 38 N. E. 278; Matter of Enston, 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464. As was said in the latter case:

"The executors in this case do not, therefore, in any proper sense claim exemption from a general tax or a common burden. Their claim is that there is no law which imposes such a tax upon the property in their hands as executors. If they were seeking to escape from general taxation, or to be exempted from a common burden imposed upon the people of the state generally, then the authorities cited by the learned counsel for the people, to the effect that an exemption thus claimed must be clearly made out, would be applicable. But the executors come into court claiming that the special taxation provided for in the law of 1885 is not applicable to them, or the property which they represent. In such a case they have the right, both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of the law."

In Matter of Moses supra, bequests to Young Men's and Young Women's Christian Associations were held not taxable under the section under which exemption is claimed in this case. The court there held that the Young Men's Christian Association was an educational corporation, and said that in this statute "educational is not used in its meaning of instruction by school, college, or university, which is a narrower or more limited meaning of the word (Century Dictionary), but in its broader signification as the act of developing and cultivating the various physical, intellectual, and moral faculties towards the improvement of the body, the mind, and the heart. I am justified in this statement by the definition of the Century Dictionary of Webster, and of Worcester." See, also, cases cited in that case. Matter of Moore, supra, holds that a bequest to the Women's Christian Temperance Union of Ballston Spa, N. Y., was exempted under this same provision of the statute.

[2] It is contended by the comptroller that Arnot Art Gallery cannot be exempted as an educational institution for the reason that it is not connected with some educational or school system and he asserts that the bequest in the Mergentime Case, supra, was decided as exempt because in some way the Metropolitan Museum of Art was

connected with the New York City school system. It will be noted here that there are two purposes set forth in the will—a primary and a secondary purpose. The first is to be a collection of objects of art of real merit and enduring worth and interest, to which the public shall have under reasonable regulations free access. The secondary purpose thereof is to establish and endow a library exclusively for reference, and not to any extent for circulating uses which owned, maintained, and enlarged by said corporation shall be accessible and free, under proper regulations, to all who may seek aid therefrom.

Some 70 paintings and many other works of art are bequeathed to this art gallery, also all the books and papers of the deceased, making a very valuable and quite a large collection for a city of the size of Elmira. It will be in my opinion a much more important institution for the city of Elmira than is the Metropolitan Museum of Art for the city of New York, considering the respective sizes of the two places and the numbers of people that are likely to visit and be benefited and educated by these collections and these institutions. I think it is very important as indicating the trend of the testator's mind, and the kind of corporation he was providing for at the time that he drew his will, that prior to this large and principal bequest to the Arnot Art Gallery he should have given $3,000 to the board of education of the city of Elmira, the income of which should be expended annually by the said board of education "for pictures or other objects of artistic nature and value appropriate and to be placed upon the walls of the school-houses, including the Elmira Free Academy of said City of Elmira." This showed in my opinion that the testator had a well-defined scheme in mind to benefit, improve, and educate the citizens of his native city by directing their attention to works of art, and giving them an opportunity for forming and cultivating such a taste, and to that end to start with the public school system in a small way, properly suited to immature and undeveloped minds, to inculcate a love and a desire to learn and to know the beautiful in art. Such objects should necessarily be simple, inexpensive, and adapted to the minds and eyes of those who would see them. A familiarity with pictures and with works of art would thus be inculcated in the minds of the very young of his native town, and what more natural than that as they grew to manhood and womanhood the art gallery which his thoughtful munificence had provided for them should be sought out by them to continue carrying forward and developing the work and education which he had sought to foster a taste for in the younger pupils of Elmira.

It seems to me to be a well rounded-out scheme of education, primarily for the people of his native town, and also for any people who might visit it. This was to be free of charge, both as to examination of the works of art and use of the reference library. Certainly a study by any person or persons with a love for art and a desire to create such a love of the pictures alone bequeathed by this testator could not but be an education. What his munificence has provided, what he has given, is simply a nucleus, a big nucleus for a place of the size of the city of Elmira, and one which cannot but be a bene-

fit to the residents of that city and that part of this state. What is this "Arnot Art Gallery" thus provided for and actually incorporated within the period limited by the will, if not an "educational corporation"? Educational? The testator has established and endowed the entire curriculum! The "pictures or other objects of artistic nature and value appropriate" placed upon the walls of the schoolhouses of Elmira provide the kindergarden and the primary course in art, those upon the walls of the Elmira Free Academy the senior course, and the Arnot Art Gallery furnishes the postgraduate course free to all. No pay days as has the "Metropolitan Museum of Art," no necessary passes for teachers, but free to all, teacher and taught, "under proper and reasonable regulations" at all times. It is and must be a great "educational" institution. The term "educational" has been given by our courts a broad and liberal construction, and I think the term as used in the statute is broad enough to cover this Arnot Art Gallery.

All the transfer tax is payable from the residuary estate, but, as we have seen that certain portions of the residuary estate are to come to this Arnot Art Gallery in any event, and others may come to it, it will be seen that the payment of the tax upon the transfer to the Arnot Art Gallery will deplete this fund; in other words, it will take property devised, bequeathed, and transferred to an educational corporation to pay this tax which the statute says shall not be done.

I agree with the well-considered opinion of the learned surrogate that the bequests and devises to the Arnot Art Gallery should not be taxed, and it follows, therefore, that the order appealed from should be affirmed, with costs to the executors. All concur.