EDWARD I. SAVAGE, receiver of the Johnson Railway Signal Company, appellant,

*v.*

GEORGE MILLER, trustee, et al., respondents.

[Filed February 28th, 1898.]

1. When a corporation becomes insolvent its directors become trustees for the creditors, over whose claims they can obtain no personal preference.

2. Where the note of a creditor has been lawfully preferred, the fact that directors are endorsers thereon does not defeat his preference; the result is to subrogate the general creditors to the rights of the preferred creditor against the endorsing directors to the extent of the preference.

On appeal from a decree advised by Vice-Chancellor Reed, who delivered the following opinion :

The mortgage is attacked by the receiver, upon the ground that the directors of this insolvent company had such an interest in the payment of the debts secured by it that the preferences

so created are voidable. The execution of the mortgage was directed by the votes of three directors of a board of five. The votes of all the three in favor of the mortgage were essential to a legal expression of the corporate will. If any one of these three directors was disqualified by reason of his adverse interest from joining in the action of the board, the execution of the mortgage was an unauthorized act. The question, therefore, as to what would have been the consequence if the mortgage had been supported by the votes of a majority of the board, apart from the votes of interested directors, is not presented for solution.

I will take up each of the five debts in the order in which I have stated them.

The company was, as I have already observed, insolvent at the moment when the mortgage was created. The debts secured were only part of the general debts then existing. The preferences, if valid, will exhaust the assets.

That the directors of an insolvent company could, previous to the act of March 5th, 1895, prefer some of its creditors to the exclusion of others was decided by the court of errors in the cases of *Wilkinson* v. *Bauerle, 14 Stew. Eq. 635*, and *Vail* v. *Jameson, 14 Stew. Eq. 648.*

In the subsequent case of *Montgomery* v. *Phillips, 4 Dick. Ch. Rep. 203*, decided in the same court, the court, while recognizing the general power of an insolvent corporation to prefer creditors, circumscribed the generality of the rule by holding that if the directors were themselves the creditors who were preferred, then their interest as creditors was inimical to their duties as trustees for all the creditors, and their act in making such preferences was voidable.

Under the doctrine declared in the last-mentioned case the mortgage now questioned, so far as it secures the note for $2,500 given to George W. Miller, and by him passed to Georgina M. Johnson, is clearly voidable. It was made to secure an antecedent debt due to Mr. Miller, one of the directors of the company.

The next one of the debts so secured was that of the Union

28

County Bank.  Upon the note which the bank held as evidence of this debt the three acting directors were endorsers.  The mortgage was made to secure the bank, and not made directly to the endorsers to secure them against their liability as such.

I am at a loss to perceive how this fact can create a difference in the attitude of the directors toward this debt.  The principle upon which *Montgomery* v. *Phillips* was decided was that the directors were trustees for all the creditors, and that, as trustees, their conduct in the distribution of the property of the company among its creditors should not be influenced by any personal interest adverse to the interest of the general body of creditors whom they represented.  It applied to the directors of an insolvent corporation, as trustees, the same restrictive doctrine that is applicable to all trustees.  *1 Perry Trusts* § *207*.

Now, it is transparent that the effect of the mortgage, so far as it subserves the interests of the endorsing directors, was exactly the same as if it had been made directly to them to secure them against their liability as endorsers.  The fact of the corporation insolvency led, necessarily, to a certainty that these directors would be called upon to pay a part of the note; and whether the property of the corporation should be used to pay the entire debt due the bank, or whether it should be used to reimburse the endorsers, in case they became liable to pay the bank, did not matter.  The relief which they received from the burden of their contract, as endorsers, was exactly the same whether the mortgage was made in the one or in the other form.  Nor does the fact that the directors of the bank or otherwise interested in that institution, and so would not in that way profit by the payment of this debt, remove the act of the directors from the control of the rule mentioned.  The bank had no right to a preference; it was only an act of grace on the part of the directors.  The voidability of the directors' acts does not spring from the fact that the trustees had a common interest in the two corporations, but arises from the fact that they were serving their own interest in making the preference.  It is the bias which destroyed that judicial discretion which should control them when dealing with the assets of the corporation, that invalidates their act.  Upon

principle, then, I am unable to perceive how it is possible to condemn a mortgage made to an endorser, and to approve of a mortgage so made as to benefit the endorser in exactly the same degree. In *Lippincott* v. *Shaw Carriage Co.*, *25 Fed. Rep. 585*, it was held that the votes of two directors who assisted in authorizing the making of a mortgage to secure a note upon which they were endorsers, were nullities.

I am aware that in *Montgomery* v. *Phillips* this apparently inevitable conclusion does not seem to have been carried to a legitimate result; for in that case the assignment to the bank of the accounts of the corporation for the purpose of paying a note discounted by the bank and endorsed by a director, would come under the ban of this rule. But the attack upon the assignment in that case was made solely upon another ground, which ground is set out in the opinion. Only the chattel mortgage in that case was attacked, upon the ground that it was made by a director to secure himself. The rule laid down by the court was, through oversight, not applied to the assignment of the bank accounts. So in *Wilkinson* v. *Bauerle, supra,* the question discussed was whether the directors of an insolvent company could secure creditors. The exception which limits this general rule was not discussed.

The third debt secured is the $6,143 note held by Georgina M. Johnson as executrix of her husband, to whom the money had been due. George W. Miller, who prepared the mortgage and was one of the voting directors, as already remarked, was her father, and was in the transaction looking after her interests. His position, both as attorney and relative of Georgina M. Johnson, was entirely inconsistent with his position as trustee, representing the general creditors of the company.

I adopt the language of the court in *Adams* v. *Kehloy Milling Co.*, *25 Fed. Rep. 435,* as sound and singularly pertinent : " If the directors of an insolvent corporation in the distribution of its assets pay a certain creditor in full to the exclusion of others, the choice ought to be influenced solely by relationship existing between the directors and the creditors preferred, or by other considerations of a purely selfish nature. In the present case it

is the estate of a deceased director and president of a corporation that was preferred. The majority of the board were brothers of the deceased; one of them was agent for the estate, and controlled and voted its stock in corporate meetings." The preference was set aside.

The fourth debt secured is the note given to pay the Hall Signal Company for advances previously made by the latter company to the insolvent corporation. This note was turned over to Georgina M. Johnson in part payment of the debt which the Hall Signal Company owed her husband's estate. Mr. Hall, one of the directors, and acting vice president of the insolvent corporation, was a stockholder and director of the Hall Signal Company. This, as a matter of course, unfitted him for acting as trustee in this transaction. Besides this interest of Mr. Hall, which disqualified him from voting for the execution of the mortgage to secure this note, Mr. Miller stands in the same posture in regard to this as he does in respect to the preceding note. The mortgage, so far as it preferred this note, is a nullity.

The last of the preferred creditors is Kernochan. There is nothing in the testimony to show that any of the directors who voted for the execution of this mortgage were interested in the payment of this debt, in any way distinct from their interest in the payment of the debts of the general creditors. There is nothing, therefore, to invalidate the mortgage, so far as it secures the payment of the Kernochan debt, flowing from the relation of the directors with Kernochan.

But it is insisted that the mortgage is void in toto because it was ordered by persons who were not legal directors of the corporation.

It appears that the by-laws originally provided for the election of directors at the annual meeting of stockholders, and for the amendment of the by-laws at an annual or a special meeting called for that purpose.

The board of directors themselves, without authority, amended the by-laws regulating the election of directors, so that the board could appoint to fill vacancies, and, in pursuance of such amended by-law, appointed two of the directors who ordered this mort-

gage. These appointees remained in office from 1890 till January 18th, 1895. In the meantime, stockholders' meetings were held, the right of these appointees to hold their offices was not questioned, but, on the contrary, recognized. They were held out, by the assent of the stockholders, as the agents of the corporation. They were directors *de facto*.

The equitable rights of the *cestuis que trust* under the mortgages are not affected by the irregularity in the manner of their appointment.

The remaining feature of the cause which has presented itself is this, viz., is the mortgage so tainted by the general purpose of the directors who ordered its execution as to avoid it *in toto?*

If it had appeared in the case that the preference of the Kernochan debt was essential to a successful carrying out of the scheme to prefer the other creditors, there would have been force in the notion that the same condition of mental bias which induced the preference of the directors, induced the preference of Kernochan.

But nothing whatever appears in the case to show that the Kernochan debt was in any way related to the other debts, or why Kernochan was included in the list of preferred creditors.

The mortgage should be decreed void, so far as it secures the debts other than that of Kernochan.

*Mr. George W. Miller, pro se; Messrs. Corbin & Corbin,* of counsel for the appellant.

*Mr. John Griffin,* for the respondents.

The opinion of the court was delivered by

GARRISON, J.

The question to be decided upon this appeal is, whether the claims of certain creditors of the Johnson Railway Signal Company were lawfully preferred by a mortgage given by its directors to George W. Miller, trustee, in the month of January, 1895, at which time the corporation was insolvent. The bill,

which is filed by Edward I. Savage, receiver, attacks the mortgage as a preference upon the ground that George W. Miller, to whom it was made, was a director of the insolvent company. It may be well to note here that the statute of this state that, prior to the Revision of 1875, rendered void as against creditors the transfer of its property by any insolvent corporation, or by a corporation in contemplation of insolvency, was dropped by the legislature from the Revision of that year (1875), but was re-enacted on the 5th day of March, 1895; which, it will be observed, is after the giving of the present mortgage. During the twenty years this statute was off the books this court decided *Wilkinson* v. *Bauerle, 14 Stew. Eq. 635 (1886)*; *Vail* v. *Jameson, 14 Stew. Eq. 648 (1886)*; *Bergen* v. *Porpoise Fishing Co., 15 Stew. Eq. 395 (1887)*, and *Phillips* v. *Montgomery, 8 Dick. Ch. Rep. 203 (1895)*.

The necessity for these decisions may, in the future, cause perplexity, unless the fact with respect to the statutory law be borne in mind.

The mortgage in question having been given during this interval is to be tested by these authorities, especially by that last cited.

The creditors preferred are five in number, whose claims may be thus epitomized:

1. Mrs. Georgina M. Johnson, a daughter of George W. Miller, to whom he had passed a note of the company for $2,500, made to its own order, and delivered to Miller for past services.

2. The Union County Bank, which had loaned to the corporation $5,000, for which it held its note, endorsed by George W. Miller and two other directors.

3. Georgina M. Johnson, who, as executrix of her husband, held the company's note for $6,143, loaned to it by her husband.

4. A note for $29,205.53, held by the same executrix for money due to her husband from the Hall Signal Company, that by an agreement between it and the present company before insolvency, was assumed by the latter upon a good consideration.

5. A note for $8,600 to Frederick Kernochan, administrator.

Applying to these creditors the doctrine of *Phillips* v. *Mont-*

*gomery*, the learned vice-chancellor who heard the cause set aside all of the claims with the single exception of that of Frederick Kernochan. In reaching this result in the case of the Union Bank, and of the two claims of Georgina M. Johnson, executrix, a meaning and an effect were given to the prior decision of this court that go beyond what it decided, and extend the doctrine of that case beyond the ground on which it rests. For clearly the decision of the lower court is, that any application of the property of an insolvent company to the payment of its debts made by its directors from personal motives, or the desire to benefit friends or kindred at the expense of the general creditors, is void. In effect and in terms the directors are treated as powerless to make a preference in favor of creditors to whom they are related by consanguinity, affection, or even professional relationship. This is practically to re-enact the statute against preferences. For every preference is the expression of a motive or desire on the part of the directors to favor some creditors over others—to put them, as the word implies, ahead in the race for assets. This the legislature may forbid, but this court may not. *Vail* v. *Jameson, 14 Stew. Eq.* 648. All that *Phillips* v. *Montgomery* decided was, that upon the insolvency of a corporation its directors became trustees for the creditors, and could not use their position of trust to obtain for their own debts an inordinate share of the assets. If a court of equity go further and place those whom the directors desire to prefer in the same category with themselves, the result would be that they may lawfully prefer those only whom they do not wish to benefit— which clearly was not the doctrine announced. Beyond what was held in *Phillips* v. *Montgomery* a purely judicial rule does not seem to admit of much extension, certainly not to the application made in the present case. Upon the same line of reasoning the contention is not tenable that the mortgage as a deed is void, because it secures, *inter alia*, a claim which the director is upon equitable consideration disentitled to have preferred.

Applying what I conceive to be the correct rule to the several claims secured by this mortgage, the result is :

1. The note of $2,500 given to Miller for his services, and by him passed to Mrs. Johnson, is set aside, not because she was his daughter, but because she was not in this regard a creditor of the company. The holding of the note did not make her one in equity. She knew that this note was to come into existence and for what purpose, and is thereby charged with knowing that it was invalid in the hands of the person from whom she got it; she gave no new consideration for it, and gave up no old security or right of action. She stands in the position of a volunteer, who knowingly seeks to take an inequitable share of the assets of an insolvent company. To the extent that the note entitles her to share with the unpreferred creditors it is unimpeachable.

2. The note of the Union Bank for money loaned to the company is sustained. Inasmuch, however, as the directors who are endorsers cannot obtain any benefit from this preference, the amount paid to the bank over and above what it would have received as a general creditor is recoverable from the endorsers in a suit to be brought by the receiver, if necessary. That is to say, the general creditors, through the receiver, are subrogated to the right of the bank against the endorsing directors to the extent that the bank profits by the preference. In *Wilkinson* v. *Bauerle* and *Phillips* v. *Montgomery* there were preferences sustained upon which directors were endorsers. It may be that the attention of the court was not called to that feature of those cases; but there is nothing that in principle defeats an otherwise lawful preference merely because it would be inequitable to extend the preference to all parties to the transaction. The cases · were properly decided upon the idea that the equities work out as above indicated.

3. The note of $6,143 of Georgina M. Johnson, executrix, being a debt of the corporation, is sustained.

4. The note of the same for $29,205.53 is sustained for the same reason.

5. The claim of Frederick Kernochan, which was sustained by the opinion of the vice-chancellor, is in this awkward situation: The mortgage secured certain notes held by Frederick Kernochan as administrator of Walter O. Kernochan; the bill

alleged that Frederick Kernochan was not administrator and hence did not make him a party, but made Joseph H. Kernochan a party, as administrator, and took a decree *pro confesso* against him. Notwithstanding this, the final decree, after reciting that the vice-chancellor found that the Kernochan claim was good, sets aside the claims of all the defendants, which included Joseph H., and did not affect Frederick.

The question of the proper trustee is one that may be cleared up in the court of chancery before its decree is finally settled.

The record will be remitted to chancery with its present decree reversed.

*For reversal*—The Chief-Justice, Depue, Dixon, Garrison, Gummere, Lippincott, Van Syckel, Adams, Bogert, Hendrickson, Nixon, Vredenburgh—12.

*For affirmance*—Ludlow—1.