In the Matter of the Appraisal of the Estate of LUCINDA A. WATSON, Deceased, under the Transfer Tax Act.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; THE YOUNG MEN'S CHRISTIAN ASSOCIATION OF ROME et al., Respondents.

TAX — LEGACIES TO MISSIONARY SOCIETIES AND CHRISTIAN ASSOCIATIONS NOT EXEMPT FROM TRANSFER TAX. Missionary societies and Christian associations are not religious corporations within the meaning of section 221 of the Tax Law (L. 1896, ch. 908, amd. L. 1901, ch. 458) exempting such corporations from the transfer tax imposed by that law, and legacies to them are subject to the tax where the testator died subsequent to the passage of chapter 382 of the Laws of 1900, which deprived such societies of the exemption theretofore existing under section 4 of the Tax Law.

*Matter of Watson,* 70 App. Div. 623, reversed.

(Argued May 6, 1902; decided May 20, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 18, 1902, which affirmed orders of the Oneida County Surrogate's Court exempting certain legacies from a transfer tax.

The facts, so far as material, are stated in the opinion.

*Charles R. Coville* and *Russell S. Johnson* for appellant. The beneficiaries are not religious corporations within the meaning of section 221 of the Tax Law. (*Matter of Lampson,* 33 App. Div. 49; 161 N. Y. 511; *Matter of Huntington,* 168 N. Y. 399; *Matter of Saltus,* N. Y. L. J., Feb. 14, 1902; *People ex rel.* v. *Feitner,* 168 N. Y. 494.) The purpose of these institutions is not primarily religious. (*Matter of Lampson,* 33 App. Div. 49; 161 N. Y. 511.) The rule is applicable that statutes exempting property from general taxation must be strictly construed against the person or corporation claiming the exemption, and if the exemption is not plainly expressed it may not be presumed, and the same rule is applicable to all corporations, charitable or otherwise. (*Matter of McPherson,* 104 N. Y. 306; *Matter of Vassar,*

127 N. Y. 1; *Matter of Enston*, 113 N. Y. 174; *Matter of Huntington*, 168 N. Y. 399; *City of Rochester* v. *Coe*, 25 App. Div. 305; *Catlin* v. *Trustees, etc.*, 113 N. Y. 133.)

*C. D. Prescott* for Young Men's Christian Association of Rome, respondent. The Young Men's Christian Association is a religious corporation. (*Y. M. C. A.* v. *Mayor, etc.*, 44 Hun, 102; 113 N. Y. 187; *H. F. S. Assn.* v. *N. Y.*, 4 Hun, 446; *Assn. for Colored Orphans* v. *N. Y.*, 38 Hun, 594; *St. James' Church* v. *N. Y.*, 41 Hun, 309.) When any doubt exists as to liability to the transfer tax, the doubt should be resolved in favor of the person sought to be taxed. (*The Evergreens*, 47 N. Y. 216; *Orphans* v. *Mayor, etc.*, 104 N. Y. 581; *Matter of Enston*, 113 N. Y. 174; *Matter of Vassar*, 127 N. Y. 1; *Matter of Stewart*, 131 N. Y. 274; *Matter of Fayerweather*, 143 N. Y. 114; *Matter of James*, 144 N. Y. 6; *Matter of Bronson*, 150 N. Y. 6; *Matter of Harbeck*, 161 N. Y. 211.)

*William K. Harvey* for the Missionary Society of the Methodist Episcopal Church, respondent. The respondent missionary society is a religious corporation within the clear purview, intent and meaning of the law above quoted, and entitled to exemption from transfer tax upon the legacy bequeathed to it under the will of Lucinda A. Watson. (L. 1895, ch. 723, § 2; L. 1873, ch. 175, § 3.) This missionary society is a religious society or corporation because it is a branch, in fact a part of, a great religious denomination, known the world over as the Methodist Episcopal church. (L. 1873, ch. 175, §§ 4, 5; *People ex rel.* v. *Comrs., etc.*, 142 N. Y. 248; *Stephenson* v. *Short*, 92 N. Y. 433; *H. F. S. Assn.* v. *Mayor, etc.*, 4 Hun, 446; *Matter of Smith*, 77 Hun, 134; *Y. M. C. A.* v. *Mayor, etc.*, 44 Hun, 102; 113 N. Y. 187; *Assn. for C. O.* v. *Mayor, etc.*, 104 N. Y. 581; *Matter of Miller*, 5 Dem. 132.) Taxes imposed by the Taxable Transfer Act are special and not general and are to be construed strictly against the government and favorable to the taxpayer. (*Matter of Kimberly*, 27 App. Div.

17

470; *Matter of Enston*, 113 N. Y. 174; *Matter of Vassar*, 127 N. Y. 1, 12; *Matter of Fayerweather*, 143 N. Y. 114; *Matter of Harbeck*, 161 N. Y. 211.) The claim of the comptroller that this missionary society was not organized under what is now known as the Religious Corporation Law, or could not be so organized to-day and is, therefore, not a religious corporation, is purely technical and unsound. (*Matter of Lampson*, 33 App. Div. 49.)

WERNER, J. The testatrix, a resident of the city of Rome, Oneida county, New York, died in that city September 18th, 1900, leaving a will bearing date June 27th in the same year, and which was probated November 20th following. By her will she bequeathed $500.00 to the Young Men's Christian Association of the city of Rome and $2,000.00 to the Missionary Society of the Methodist Episcopal Church. Upon the appraisal of the estate for the purpose of ascertaining the amount of the transfer tax upon it, the appraiser held these two legacies exempt. His decision was sustained by the surrogate. The state comptroller thereupon appealed to the Appellate Division, which court affirmed the order entered upon said decision. The comptroller now appeals to this court, and the sole question presented is whether the legacies to these two corporations named are exempt from the tax provided for in section 220 of the Tax Law (L. 1896, ch. 908). That section is a part of article 10 of the Tax Law, which article relates to taxes on transfers of property and, so far as material here, provides in substance that a tax of five per cent shall be imposed upon the transfer of any property by will, of the value of five hundred dollars or over, to persons or corporations not exempt by law from taxation.

Prior to 1896, article 10 of the Tax Law was a separate statute known as the Transfer Tax Law. In that year it was incorporated into the Tax Law together with other statutes relating to taxation, the legislative intent being to codify all the statutes relating to that subject into one consolidated act. After such consolidation, section 4 of the Tax Law provided

that the real and personal property of a "corporation or association organized exclusively for the moral or mental improvement of men or woman, or for religious, bible, tract, charitable, benevolent, missionary. hospital, infirmary, educational, scientific, literary, library,   *   *   *   purposes" should be exempt from taxation.   As the statutes then stood, it is conceded that the legacies to these two corporations would have been exempt.

In 1900, by chapter 382 of the laws of that year, the Tax Law was amended by adding section 243 to article 10 thereof. That section reads: "The exemptions enumerated in section four of the Tax Law, of which this article is a part, shall not be construed as being applicable in any manner to the provisions of this act." This law went into effect before the death of the testatrix. This new section, it will be observed, had the effect of taking from these corporations the benefit of the exemptions provided by section 4, and the legacies to them are now subject to tax (*Matter of Huntington*, 168 N. Y. 399), unless there is some other provision of the Tax Law by which they are exempted.   In the codification of the laws relating to corporations the legislature has divided them into classes and enacted separate statutes governing the organization and administration of each class.   Among these statutes are the Religious Corporations Law (Laws 1895, chap. 723; G. L. ch. 42) and the Membership Corporations Law (Laws 1895, chap. 559; G. L. ch. 43) . The corporations in the case at bar must belong to one or the other of these two classes.

Section 2 of the Religious Corporations Law defines a religious corporation to be a corporation organized for religious purposes.   We are not much the wiser for this definition, but an examination of the statute shows that its provisions are devoted to the organization and government of the various denominational churches.   When we turn to the Membership Corporations Law (Sec. 30) we find that corporations may be created under it "for any lawful purpose, except a purpose for which a corporation may be created under any other article of this chapter or any other general law than this chapter," and section two thereof provides that "neither the term

membership corporation, nor the term membership corporation created by special law, includes a stock corporation or a corporation organized for pecuniary profit or a corporation subject to any of the provisions of the insurance law. Subject to such exceptions the term membership corporation means a corporation hereafter incorporated under this chapter or heretofore incorporated under any law repealed by this chapter, but does not include a membership corporation created by special law, and the term membership corporation created by special law means a corporation created by special law for purposes of all of which a corporation might be created under this chapter." These definitions indicate that in the enactment of the Membership Corporations Law the legislature intended to provide for the creation of all such corporations as cannot properly be created under other provisions of the Corporation Law. Missionary societies and christian associations are not specifically named as being within the definition of "membership corporations," but in sections 90 and 91 of the Membership Corporations Law we find express provision for the organization of Young Men's Christian Associations, and in the prefatory note of the revision commissioners to said chapter, as well as in the appended schedule of laws repealed thereby, it is made perfectly plain that all previous general laws relating to the creation of missionary societies and christian associations are supplanted by it.

It is true that both of the corporations at bar were created for purposes so closely allied to religion that they may be broadly classed as religious corporations. The objects of the Young Men's Christian Association are stated to be "the improvement of the spiritual, mental, social and physical condition of young men," while those of the Missionary Society are declared to be "Charitable and religious, designed to diffuse more generally the blessings of education and christianity, and to promote and support missionary schools and christian missions throughout the United States and territories, and also in foreign countries."

But it is also apparent that the legislature, in speaking of

religious corporations, has never intended to include within that term any of the numerous benevolent, charitable, philanthropic and missionary organizations created either under special laws or under the general statutes repealed by the Membership Corporations Law. The history of legislation relating to religious corporations, beginning with the first statute (Chap. 18, Laws 1784) and running through all the laws upon that subject, which finally culminated in the Religious Corporations Law (Chap. 42, G. L.) clearly shows that it has always been the legislative policy to draw a distinct line between religious corporations and such auxiliary organizations as missionary societies. The latter were incorporated and governed under special laws until 1848 in which year the general act (Chap. 319) was passed for the incorporation of charitable, scientific and missionary societies. The classification above referred to has been maintained in all of the statutes which have succeeded the act of 1848. In addition to all this, a study of the statutes of this state relating to taxation and exemptions, reveals the fact that organizations for the mental and moral improvement of men and women, as well as missionary societies, have always been referred to in juxtaposition with religious corporations, thus clearly indicating that the latter designation was not designed to include either of the former.

This is fairly illustrated by subdivision 7, section 4 of the Tax Law which exempts from taxation the real and personal property " of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for religious, bible, tract, charitable, benevolent, missionary * * * purposes." If the term "religious corporation" had been intended by the legislature to embrace missionary societies, or associations for the mental and moral improvement of men and women, there would have been no necessity for naming them separately and specifically in the same context, much less for a distinct statute entitled the "Religious Corporations Law" which deals exclusively with church organizations as distinguished from the class of corporations

to which those at bar belong.    This view is reinforced by the
provisions of section 221 of the Tax Law as amended by chap-
ter 458, Laws 1901.    That section in express terms exempts
the property of religious corporations from the operation of
the Transfer Tax Law.    But the same section exempts only
personal property *other than money or securities* bequeathed
to a corporation organized exclusively for the moral or mental
improvement of men or women and for missionary purposes.
Had the legislature regarded missionary societies and christ-
ian associations as religious corporations, there would have
been no occasion for the special exemption which is limited
to personal property " other than money or securities " in the
case of such societies and associations.    The legislative policy
upon this subject, therefore, seems to be clearly defined and it
is our plain duty to obey the legislative command, although in
doing so we cannot refrain from expressing our regret that
the exemptions in our tax laws are not laid upon deeper and
broader foundations.

The spirit of philanthropy and charity will not be fostered
or strengthened, nor the state enriched, by a system of laws
which permit an opulent sectarian church to gather into its
coffers, tax free, the legacies of its donors, while the great
humanitarian and practical charities of the age must first yield
tribute to the state before they can take that which is given
them to do their good works.    It would almost seem as if the
restoration of the ancient law of charitable uses by chapter
701, Laws 1893 (*Allen* v. *Stevens*, 161 N. Y. 122), had been
overlooked in the subsequent codification of the statutes relat-
ing to taxable transfers, and it is to be hoped that the inequities
and inconsistencies of the latter may soon give way to a more
liberal and just rule.

The orders of the Appellate Division and the surrogate
should be reversed, with costs, and the proceedings remitted
to the Surrogate's Court with directions to proceed thereon.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT, HAIGHT and
CULLEN, JJ., concur.

Ordered accordingly.