---

(60 Misc. Rep. 637.)

### In re MOSES' ESTATE.

(Surrogate's Court, Kings County. October, 1908.)

TAXATION (§ 876*) — INHERITANCE TAX — PROPERTY SUBJECT — "CHARITABLE, BENEVOLENT, OR RELIGIOUS SOCIETY."

     Where testatrix died after Laws 1905, p. 827, c. 368, amending Transfer Tax Law (Laws 1896, p. 868, c. 908) § 221, and providing that property devised to any "charitable, benevolent, or religious society" should be exempt from the provisions of the act, legacies to the Young Men's Christian · Association, to a Society for the Prevention of Cruelty to Children, and to the Young Women's Christian Association are not taxable.

     [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*]

In the matter of the estate of Susan A. R. Moses. Proceedings on report of transfer tax appraiser. Report confirmed.

John S. Bennett, for State Comptroller.

Henry H. Bowman, for executor.

Dykman, Oeland & Kuhn, for Brooklyn Society for the Prevention of Cruelty to Children.

Judson & Hale, for Young Women's Christian Association of Brooklyn.

Lyon & Smith, for Brooklyn Young Men's Christian Association.

John B. Lord, for Lizzie Wyman Davis and others.

KETCHAM, S.   The State Comptroller seeks review of the report of the transfer tax appraiser, by which the latter officer finds that legacies of money to the Young Men's Christian Association of Brooklyn, the Brooklyn Society for the Prevention of Cruelty to Children, and the Young Women's Christian Association of Brooklyn are exempt from taxation under the transfer tax law (Laws 1896, p. 868, c. 908).   Annexed to the report are proofs amply justifying the finding that the legatee first named is an "educational, charitable, and benevolent corporation," and that the legatee secondly named is a "charitable corporation."   The affidavit presented by the Young Women's Christian Association is that it is a "religious, educational, charitable, and benevolent corporation, devoted exclusively to the moral and mental improvement of women, and is used exclusively for the carrying out of such purpose, and is wholly charitable in its objects and purposes."

The testatrix died after the passage of chapter 368, p. 827, of the Laws of 1905, amending section 221 of the transfer tax law so as to read as follows:

"But any property devised or bequeathed to any person who is a bishop or to any religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation, including corporations organized exclusively for Bible or tract purposes shall be exempted from and not subject to the provisions of this act. There shall also be exempted from and not subject to the provisions of this act personal property other than money or securities bequeathed to a corporation or association organized exclusively for the moral or mental improvement of men or women or for scientific, literary, library, patriotic, cemetery or historical purposes or for the enforcement of laws relating to children or animals or for two or more of such purposes and used exclusively for carrying out one or more of such purposes."

Prior to this amendment "charitable, educational, and benevolent corporations," with many others, were found in the second sentence among those entitled to partial exemption.   By their transfer to the first sentence they would seem to have been added to the class previously represented by religious corporations and those organized for Bible or tract purposes, to which a complete exemption was accorded.

In Matter of Francis, 121 App. Div. 129, 105 N. Y. Supp. 643, there was presented a corporation which was in fact comprehended within the class designated broadly as "educational," but was in its name, organization, and use a "library corporation."   It was held by the court that, unless the use of the broad, general term "educational" was by the statute itself limited in its application, the corporation was entitled to complete exemption.   In the application of the rule that, where exemption from taxation is claimed, the statute is to be strictly construed against the claimant, the court found that the corporation in question was so obviously within the specific definition "library corporation" that the legislative intent, expressed in the whole statute, was to exclude it from the broad generalization "educational." This means that where a given institution may grammatically be referred to either class, but cannot belong to both, construction will array it under the description which fits it so closely and so completely enfolds it that the other description is excluded from contact.

The Young Men's Christian Association must be regarded as belonging to the class indicated in the first sentence under examination as "educational, charitable, benevolent," unless there be found in the latter sentence a definition of a class to which it more aptly and distinctly belongs. There is no such definition in the second sentence quoted, unless it be found in the clause "organized exclusively for the moral or mental improvement of men or women, * * * and used exclusively for carrying out one or more of such purposes."

While the Young Men's Christian Association may well be comprehended within the language last quoted, it is probable that the Legislature has intended by the new act to confer the complete immunity prescribed in the first sentence to institutions which, although they may generally partake of the character of corporations designed for the "moral or mental improvement of men or women," are more specifically and precisely defined by one or more of the words found in the first sentence quoted. Where the Legislature has assigned for partial exemption a class described by the general words "exclusively organized for moral or mental improvement," and in another part of the same enactment has selected from this general class, by specific and distinctive appellations, a class of corporations which are described by reference to their peculiar activities toward the "moral or mental improvement" of humanity, the construction must be that the institutions thus particularized have been removed from the general class and given the privileges which pertain to the corporations specifically described. Can it be doubted that, if in the Francis Case the words "library corporation" had been found in the first sentence and the words "educational corporation" had been in the second, the subject of the discussion would have been given the exemption?

Moreover, the Legislature has adopted well-defined meanings, which must have been within its contemplation when in the same enactment it has employed in contrast the words found in these two sentences. It has created for itself a distinction between these two sets of terms, by which a corporation, whether "religious, educational, charitable, or benevolent," is, within the purview of the act, not a corporation "exclusively organized for moral or mental improvement." However much these two classes of corporations may in fact comprehend the same institutions—for in the general use of language a "religious" or "educational" corporation is one organized for "moral or mental improvement"—the Legislature has conceived and appreciated a distinction between these two contrasting terms which, though concealed from the common mind, is seen by the Legislature, and is to be interpreted as the Legislature has chosen to use it.

In the earlier act the contrast was instituted between "religious corporations and corporations exclusively organized for Bible or tract purposes" in one class, and, on the other part, the class in which were enumerated, with others, corporations organized and used "exclusively for moral or mental improvement." In the former act, for the purpose of distinguishing between the degrees of exemption accorded to the classes named in the first and second sentences, respec-

tively, it was intended and recognized that neither the "religious," the "Bible," nor the "tract" corporation was one organized and used for "moral or mental improvement." Thus, in uniform practice before the amendment, "religious" corporations, as well as corporations for "Bible or tract" purposes, enjoyed an immunity which could not be theirs if in the act in question they could be regarded as falling within the definition "exclusively organized for moral or mental improvement."

In Matter of Watson, 171 N. Y. 256, 63 N. E. 1109, the former statute was applied to a money legacy to the Young Men's Christian Association, and it was held not to be entitled to the exemption which belonged to a "religious corporation," upon reasoning which indicates that, had it been found to be within the act a "religious corporation," it would not have been a corporation "exclusively organized for the moral or mental improvement" of its men.

By the act of 1905, "educational, benevolent, and charitable" corporations were taken from the class entitled to the lower exemption and were put in association with "religious, Bible, and tract" corporations, in the class which at that time was already constituted as a class in which, under the contracts of this statute, no corporation "exclusively organized or used for the moral or mental improvement of men or women" could be included. Unless the "educational" corporation, upon this transfer from the second sentence to the first sentence, is to receive the advantages provided for the corporations described in the first sentence, it is difficult to assign any meaning or intention to the legislative act.

While the affidavit presented in behalf of the Young Women's Christian Association of Brooklyn would tend to assign it to the second general class of corporations, as one designed and applied to the "moral and mental improvement of women," it nevertheless must be referred to the first collocation of institutions, as an "educational, charitable, and benevolent" institution, because the Legislature has isolated it from the general class.

As to the Society for the Prevention of Cruelty to Children, its counsel has, upon examination of the law, consented to the entry of an order taxing the legacy to the society. But the question of its right to the exemption survives, especially as under the will any tax upon the legacy is payable by the estate. This corporation is a "charitable" institution, belonging to the first class specified in the statute as entitled to complete exemption, and by no construction falling within any definition contained in the sentence relative to the lower order of exemption. It cannot be said to be among the corporations described as "organized or used for the enforcement of laws relating to children." The proof in its behalf suggests no such design or application, and, on the contrary, declares that the society is organized under the "Act for the incorporation of societies for the prevention of cruelty to children," and is "maintained to furnish aid to children who are not properly cared for."

The finding of the appraiser is confirmed.

Report of appraiser confirmed.