Tax Law (Consol. Laws, c. 60) § 221, provides that property devised to any religious, educational, charitable, missionary, or benevolent corporation shall be exempted from the transfer tax, and that there shall also be exempted from the provisions of the act personal property other than moneys or securities bequeathed to a corporation or association organized exclusively for the moral or mental improvement of men or women, or for the enforcement of laws relating to children or animals, and used exclusively for carrying out one or more of such purposes. The charter of the Young Men's Christian Association states that the object of the corporation shall be, primarily, the improvement of the moral and spiritual condition of young men and the improvement of their intellectual, physical, and social condition, and there was evidence to show that the asso-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ciation carried on this work by religious meetings and educational classes. The Young Women's Christian Association is organized under Laws 1891, c. 167, the first section of which provides for the formation of an association by any 20 or more women being desirous of associating themselves for the improvement of the spiritual, moral, or mental condition of young women. *Held*, that a devise to the Young Men's Christian Association and one to the Young Women's Christian Association was exempt from the payment of the transfer tax, but that a devise of $3,000 to the Society for the Prevention of Cruelty to Children is not exempt, as that association must be classified under the partially exempt class.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 876.*]

2. CORPORATIONS (§ 382*)—CORPORATE POWERS—STATUS IN GENERAL.

The status of a corporation must be determined by the act of incorporation, and not by what the corporation may assume to do.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1514, 1515, 1517, 1518, 1536; Dec. Dig. § 382.*]

3. TAXATION (§ 876*)—TRANSFER TAX—EXEMPTIONS—"EDUCATIONAL."

The word "educational," as used in Tax Law (Consol. Laws, c. 60) § 221, exempting bequests to educational corporations from transfer tax, is not used in the meaning of instruction by school, college, or university, which is a narrower or more limited meaning of the word; but in its broader signification as the act of developing and cultivating the various physical, intellectual, and moral qualities towards the improvement of the body, the mind, and the heart.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1695; Dec. Dig. § 876.*

For other definitions, see Words and Phrases, vol. 3, pp. 2316–2318; vol. 8, p. 7647.]

Appeal from Surrogate's Court, Kings County.

In the matter of the appraisal under the transfer tax act of the property of Susan A. R. Moses. From an order of the Surrogate's Court (60 Misc. Rep. 637, 113 N. Y. Supp. 930), confirming the report of the Tax Appraiser, an appeal was taken by the Comptroller of the State. Modified and affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and CARR, JJ.

William W. Wingate, for appellant.

Charles N. Judson, for respondent Young Women's Christian Association of Brooklyn.

Edward P. Lyon, for respondent Young Men's Christian Association of Brooklyn.

JENKS, J. This appeal challenges the decision of the surrogate of Kings county that three corporations, the Young Men's Christian Association of Brooklyn, the Young Women's Christian Association of Brooklyn, and the Brooklyn Society for the Prevention of Cruelty to Children, are exempt from transfer tax. The question arises upon the will of Moses, who died in 1906. Matter of Watson, 171 N. Y. 256, 63 N. E. 1109, does not control this case in view of an amendment of the statute subsequent to that judgment.

Upon determination of such a question the policy of the law "must be considered and should have great weight." People ex rel. B. E. M. Co. v. Wemple, 129 N. Y. 552, 29 N. E. 810, 14 L. R. A. 708. This

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

charge, for convenience called a "tax" (Matter of Hamilton, 148 N. Y.
311, 42 N. E. 717), is upon the right of succession, not upon property,
made on the theory that succession is a creation of the law (Matter of
Dows, 167 N. Y., at page 231, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St.
Rep. 508). It may be regarded as a tribute to government that estab-
blishes and maintains that right. Logically enough, it appears that
this tax in Rome went into a peculiar treasury for the pay of the
soldiery of Augustus. Gibbon's Decline and Fall of the Roman Em-
pire, c. 6. And Ferrero informs us that the law was resisted as legal-
ized prescription and only brought to passage by an invocation of the
alleged papers of the dead Julius Cæsar—a forgery. Volume 1, 301.
This tax has been advocated and justified upon divers grounds. Our
Court of Appeals has justified it in that succession is a privilege inuring
to those who "did not help to earn" the property "and very often do
not deserve" it. Matter of Curtis, 142 N. Y. 219, 36 N. E. 887. This
justification for a tax which diminishes the property transferred has no
ground in the case of such a successor as is this corporation, for it
could not have helped to earn the property if it would, and it can be
said to deserve it in view of the purposes of its organization. The
principle of exemption, then, in such a case as is before us, rests upon
good reason. Indeed, it has been asserted as scarcely less than a duty,
in that these corporations are alike the fruits and aids of good govern-
ment. In Matter of Huntington, 168 N. Y., at page 407, 61 N. E.
646, the court, per Landon, J., say:

"The organized charities and benevolent agencies which actually relieve
human misery, and labor in unselfish devotion to improve the moral and phys-
ical condition of mankind, are alike the fruits and aids of good government,
and to exempt their property—usually the gifts of the benevolent—from the
burdens of taxation is scarcely less the duty than the privilege of the enlighten-
ed legislator. Clearly this exemption should be placed upon broad, equitable
grounds, quite above the injurious imputations sometimes resulting from in-
dividual or special exemptions."

Collectivism has promoted and fostered these corporations until
they are almost to be regarded as governmental adjuncts making for
the general good of the commonwealth.

The material part of the statute reads:

"But any property devised or bequeathed to any person who is a bishop, or
to any religious, educational, charitable, missionary, benevolent, hospital or
infirmary corporation, including corporations organized exclusively for Bible
or tract purposes, shall be exempted from and not subject to the provisions of
this act. There shall also be exempted from and not subject to the provisions
of this act personal property other than moneys or securities bequeathed to a
corporation or association organized exclusively for the moral or mental im-
provement of men or women or for scientific, literary, library, patriotic, ceme-
tery, or historical purposes, or for the enforcement of laws relating to children
or animals, or for two or more of such purposes and used exclusively for car-
rying out one or more of such purposes." Section 221 of the tax law (Consol.
Laws, c. 60).

Previous to the amendment by chapter 368 of the Laws of 1905,
charitable, benevolent, missionary, hospital, infirmary, and educational
corporations, were placed in the limited exempted class of the statute.
In Matter of Watson, supra, the court, per Werner, J., said:

"The spirit of philanthropy and charity will not be fostered or strengthened, nor the state enriched, by a system of laws which permit an opulent sectarian church to gather into its coffers, tax free, the legacies of its donors, while the great humaritarian and practical charities of the age must first yield tribute to the state before they can take that which is given them to do their good works. It would almost seem as if the restoration of the ancient law of charitable uses by chapter 701, Laws 1893 (Allen v. Stevens, 161 N. Y. 122 [55 N. E. 568]), had been overlooked in the subsequent codification of the statutes relating to taxable transfers, and it is to be hoped that the inequities and inconsistencies of the latter may soon give way to a more liberal and just rule."

In People ex rel. B. E. M. Co. v. Wemple, supra, the court say:

"When a material change in phraseology is made many years after the passage of the act, and after controversies and differences in regard to its construction have arisen, there is sometimes a presumption that the Legislature intended by the amendment to add a new provision to the original act, and to make it apply to a case to which it did not apply before."

May we not indulge in the presumption that the amendment in question was made in observance of these expressions of the court in Matter of Watson, supra, and Matter of Huntington, supra? With regard to the fact that the amendment did not exempt wholly certain of these corporations, I think it may be said that the objects and purposes of religious, educational, charitable, missionary, benevolent, hospital, infirmary, Bible, or tract corporations are more closely articulated with the functions of government for the amelioration of society, in the spirit of practical altruism, than are scientific, literary, library, patriotic, cemetery, historical corporations, or those exclusively organized for mental or moral improvement as those terms are used in this statute. Praiseworthy as are the objects of the latter class, such corporations would not devote money or securities as directly to the benefit of the people as would the organizations enumerated in the exempt class.

I think that the Young Men's Christian Association falls within the definition of "educational," as the term is used in this statute. As the terms are all general, we cannot expect to find the definition as exact as if it were aimed directly at any particular corporation. "Educational" is not used in its meaning of instruction by school, college, or university, which is a narrower or more limited meaning of the word (Century Dictionary), but in its broader signification as the act of developing and cultivating the various physical, intellectual, and moral faculties towards the improvement of the body, the mind, and the heart. I am justified in this statement by the definition of the Century Dictionary, of Webster, and of Worcester. In matter of Francis, 121 App. Div. 129, 105 N. Y. Supp. 643, Robson, J., says that this word as used in this statute must be taken in its broad sense and would have included a library therein save for the express specific definition contained in the limited exemption clause. The case was affirmed on the opinion below. 189 N. Y. 554, 82 N. E. 1126. The Supreme Judicial Court of Massachusetts, in Mt. Hermon Boys' School v. Gill, 145 Mass. 139, 13 N. E. 354, discussing this word in a similar statute, say:

"Education is a broad and comprehensive term. * * * Education may be particularly directed to either the mental, moral, or physical powers and faculties, but in its broadest and best sense it relates to them all."

And in Essex v. Brooks, 164 Mass. 83, 41 N. E. 119, a free public library was held within this term "educational" in a similar statute. And in Matter of Mergentime, 129 App. Div. 367, 113 N. Y. Supp. 948, this court in its First department has held that the Metropolitan Museum of Art was exempt as an educational corporation. See, too, State ex rel. Henderson v. Le Sueur, 99 Mo. 552, 13 S. W. 237, 7 L. R. A. 734.

The charter of this corporation states:

"The object of this corporation shall be, primarily, the improvement of the moral and spiritual condition of the young men of Brooklyn, by means always appropriate to, and in unison with, the spirit of the Gospel; and, secondarily, the improvement of their intellectual, physical and social condition by the same means." Section 2.

Also:

"The board of directors of said corporation may make such by-laws and rules for the regulation and conduct of its business and affairs, the choice, powers and duties of its officers and agents, and the carrying of this act into effect, as are not inconsistent with its charter and the laws of this state." Section 7.

And further:

"No intoxicating drinks, or strong or lager beer, shall be sold, used, or allowed in or upon any part of the real estate owned or controlled by the corporation."

While it is true that the status of a corporation must be determined by the act of incorporation and not by proof of what it has assumed to do (Matter of White, 118 App. Div. 869, 103 N. Y. Supp. 688), yet I think that proof may be received of the character of the work undertaken by that corporation pursuant to its powers. The affidavit of the president of this corporation states that it carries on its work "by religious meetings, educational classes and rooms and conditions for the social intercourse between young men and that for the accomplishment of the objects of said association, it maintains several branches."

But it is contended that this corporation is within the limited exemption class for the reason that it is a corporation organized for the moral or mental improvement of men. In a sense it is certainly a corporation organized for the moral improvement of men; that is, the objects of this corporation can be said, speaking to the result, the moral improvement of men. But so it can be said of a religious corporation, a missionary corporation, a Bible, or a tract corporation. Any corporation whose activities would result in inculcating the rules of right conduct might in a sense be said to be organized for the moral improvement of men. But it is to be borne in mind that the expression is not used in the statute to describe generally the object of a corporation, but to define its status, just as the words "benevolent," "missionary," "Bible," "tract," "literary," "cemetery," and the rest. This is further indicated by the word "exclusively," so that a corporation that falls within that term must be exclusively organized for the moral improvement of men. Can it be said in any event that a corporation whose corporate objects are the improvement of the moral and spiritual condition and the in-

tellectual, physical, and social condition of men is defined by the term "exclusively organized for the moral improvement of men." In Lyon v. Mitchell, 36 N. Y. 235, 93 Am. Dec. 502, the court, per Hunt, J., say:

"Morality is defined by Paley to be 'that science which teaches men their duty, and the reason of it.' Paley, Mor. Ph., b. 1, c. 1. 'Morality is the rule which teaches us to live soberly and honestly. It hath four chief virtues, justice, prudence, temperance, and fortitude.' Bp. Horne's Works, vol. 6, charge to clergy of Norwich."

The same considerations apply to the use of the word "mental." The learned counsel for the appellant invokes the rule of strict construction in considering exemptions from taxation. But that rule is not to be invoked to defeat the intention of the lawmaker. Sutherland on Statutory Construction, § 356. Story, J., in United States v. Winn, 3 Sumn. 209, Fed. Cas. No. 16,740, says:

"Where words are general, and include various classes of persons, I know of no authority which would justify the court in restricting them to one class, or in giving them the narrowest interpretation, when the mischief to be redressed by the statute is equally applicable to all of them. And where a word is used in the statute which has various known significations, I know of no rule that requires the court to adopt one in preference to another simply because it is more restrained, if the objects of the statute equal the largest and broadest sense of the word. In short, it appears to me that the proper course in all these cases is to search out and follow the true intent of the Legislature, and to adopt that sense of the words which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects of the Legislature"—cited in Sutherland, p. 451.

I think that the Young Women's Christian Association is exempt as within the term "educational." It was organized under chapter 167 of the Laws of 1891. The first section thereof in part provides:

"Any twenty or more women being citizens and residents of this state and being desirous of associating themselves for the improvement of the spiritual, mental, moral and physical condition of young women by meetings for public worship, by academical instructions, by the maintenance of a public library and reading room, and by such other means not inconsistent with the objects of the association as its executive board may devise."

But I do not agree that the Brooklyn Society for the Prevention of Cruelty to Children is within the wholly exempt class. We must seek the definitive term, and I think that we find it in the expression of the partly exempt class "organized for the enforcement of laws relating to children." The learned surrogate in his illuminating opinion writes:

"It cannot be said to be among the corporations described as 'organized or used for the enforcement of laws relating to children.' The proof in its behalf suggests no such design or application, and, on the contrary, declares that the society is organized under the 'act for the incorporation of societies for the prevention of cruelty to children,' and is 'maintained to furnish aid to children who are not properly cared for.'"

The record before us but shows the affidavit of its secretary, who deposes only that it was organized under chapter 130 of the Laws of 1875; that it is a legatee; that it asserts exemption from the restrictions mentioned in chapter 319 of the Laws of 1848; that it claims exemption from the transfer tax; and that it does not own property exceeding in value $3,000,000, nor does its yearly income derived from

its property exceed $250,000. As I have said, the status of the corporation must be determined by the act of incorporation, not by what the corporation may assume to do. Matter of White, supra. When we refer to the said act, we find that the powers beyond those commonly given to corporations and relating to their government, management, and control are thus expressed:

"Sec. 3. Any society so incorporated may prefer a complaint before any court or magistrate having jurisdiction for the violation of any law relating to or affecting children, and may aid in bringing the facts before such court or magistrate in any proceeding taken.

"Sec. 4. All magistrates, constables, sheriffs and officers of police shall, as occasion may require, aid the society so incorporated, its officers, members and agents in the enforcement of all laws which now are or may hereafter be enacted, relating to or affecting children."

As the bequest to this society is $3,000, the society is not exempt.

The order must be modified with respect to the Brooklyn Society for the Prevention of Cruelty to Children, last named, and, as so modified, it is affirmed. All concur.