Meyers; but nothing before had been said about a bequest to the church. He considered the testator competent to make and execute a will, and in this belief he is perfectly sincere, and acted in the utmost good faith; but he did not see the testator, nor meet him daily, as the numerous witnesses did, nor did he consult with the attending physicians as to his mental condition.

The testator was treated by one of our most reputable physicians at more or less irregular intervals from 1898 or 1899, to November 24, 1904, at which time the testator was unable to write his name. And this physician tells us of the disease, its progress, its effect, of the mental degeneration, and states as his opinion that it would be impossible for Mr. Proctor to direct the preparation and execution of a valid will and codicil at this time. Another physician treated the testator during the year 1903, and gives the same opinion, and very convincing reasons therefor. Still another physician treated him from the winter of 1903 until his death, and is of the same opinion. Another physician, from out of the city, had occasion to examine him in 1904, and is also of the same opinion. They say, in substance, that he could not have clearly and full comprehended the nature and extent of his property, nor the provisions of a will, nor the objects of his bounty; and, in view of these and all the other facts in this case, how can the court find otherwise?

My conclusions are in accord with the attending physicians, and, considering all the testimony, I can reach no other. It follows, therefore, that the probate of the alleged will and codicil must be denied, and the will of July 12, 1888, admitted.

A decree may be entered accordingly.

The attorneys may meet on Saturday, December 31st, at 10 a. m., and arrange further terms of the decree.

---

## In re McCORMICK'S ESTATE.

(Surrogate's Court, Orleans County. January 28, 1911.)

1. TAXATION (§ 876*)—TRANSFER TAXES.
   Under the provision of the transfer tax law (Consol. Laws, c. 60), exempting property willed to charitable corporations, the statute under, and not the purpose for, which a society was organized controls.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*]

2. CHARITIES (§ 1*)—CHARITABLE "CORPORATION."
   While "charity" has a broad meaning, a "charitable corporation" is one whose principal aim is to benefit needy ones other than by improving their morals (citing 2 Words and Phrases, 1086).
   [Ed. Note.—For other cases, see Charities, Cent. Dig. § 1; Dec. Dig. § 1.*]

3. TAXATION (§ 876*)—TRANSFER TAXES—EXEMPTIONS—"CHARITABLE CORPORATION."
   A society incorporated under a special act to promote evangelical religion by means of the Bible, the printing press, colportage, Sunday

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

schools, and other appropriate ways, is not a "charitable corporation" within the provision of the transfer tax law, exempting property willed to such corporations.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*]

In the matter of the appraisal of the estate of Lucy M. McCormick, deceased, under the acts relating to taxable transfers. From the county treasurer's decision, the State Comptroller appeals. Partly affirmed, and partly reversed.

Fredd H. Dunham, for the State Comptroller.
D. W. Perkins, for the American Baptist Publication Society.

SIGNOR, S. This is an appeal from the assessment of the transfer tax in the estate of Lucy M. McCormick, deceased, by which among other things the county treasurer decided that a legacy given to the American Baptist Publication Society was exempt from taxation. The American Baptist Publication Society, a legatee under the will, was originally incorporated in the state of Pennsylvania, but, by a special act of the Legislature, passed April 12, 1906 (Laws 1906, c. 198), was reincorporated in the state of New York. This act recites the incorporation of the society by an act of the Pennsylvania Legislature in 1845, "for the purpose and object of promoting Evangelical Religion by means of the Bible, the printing press, colportage, Sunday schools, and other appropriate ways," and reincorporates it for the same purpose. It is admitted by the counsel for the society that it is not exempted from taxation under that provision of section 221 of the tax law (Consol. Laws, c. 60), which reads as follows:

"Any property devised or bequeathed to corporations organized exclusively for Bible or tract purposes, shall be exempted from and not subject to the provisions of this article."

But it is claimed on behalf of the society that it is exempted under that provision of the statute which holds that any property devised or bequeathed to charitable corporations shall be exempted from and not subject to the provisions of this article. In view of the holding of the courts in other cases no exemption is claimed upon the ground that it is a religious society, but the claim is that the term "charitable" is broad enough to include a society organized for the purpose recited in its act of incorporation. It will be observed that this society is not incorporated under any general act. It seems that it is not the purpose for which the society is organized, but the statute under which it is organized that controls.

In the Matter of White, 118 App. Div. 869, 103 N. Y. Supp. 688, a bequest had been given to the McAuley Water Street Mission in New York City and there was evidence tending to show that the major part of the business of the McAuley Water Street Mission was of a charitable nature. The court says:

"We are of the opinion that this evidence should not be considered, as we agree with the learned counsel for the respondent that the status of this corporation must be determined by the statutory law and its certificate of incorporation rather than by what it has assumed to do thereunder."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the Matter of Watson, 171 N. Y. 256, at pages 260, 261, 63 N. E. 1109, at page 1111, Werner, J., says:

"But it is also apparent that the Legislature, in speaking of religious corporations, has never intended to include within that term any of the numerous benevolent, charitable, philanthropic and missionary organizations created either under special laws or under the general statutes repealed by the membership corporations law."

He further says that the history of legislation relating to religious corporations, beginning with the Laws of 1784 and culminating in the religious corporations law, clearly shows it has always been the legislative policy to draw a distinct line between religious corporations and such auxiliary organizations as missionary societies. The latter were incorporated under special laws until 1848 when an act was passed for the incorporation of charitable, scientific and missionary societies. Were it not for these decisions, I should be inclined to hold that this society was exempt as a religious organization, but this is not claimed by the attorney for the society; neither do I think it could be sustained.

In the Matter of White, supra, Ingraham, J., says:

"The Court of Appeals seems to have held in Matter of Watson, 171 N. Y. 256 [63 N. E. 1109], that a religious corporation, under section 221 of the tax law, as amended by chapter 458 of the Laws of 1901, is a corporation organized under the religious corporations law (Laws 1895, c. 723), and does not include a corporation organized under chapter 319 of the Laws of 1848, or the membership corporations law (Laws 1895, c. 559), the test, as I understand it, being the particular acts under which the corporation was organized, and not the purposes for which it was organized."

This being so, it would seem that all corporations organized under special acts would be subject to the tax. But, assuming that this society, if a charitable society, would be exempt, I do not think that it comes under that definition as used in the tax law. While the word "charity" has a broad meaning, yet I think when used in connection with a charitable corporation, it must be one whose principal aim is to give of its material substance or time to benefit those who are in need of such assistance, or will be benefited by such gift or expenditure in some other way than simply by an improvement of morals or bringing them under the influence of the gospel. I do not see that a person or a corporation seeking to advance the cause of religion only can be said to be engaged in a charitable work in the ordinary sense in which that term is used. On the other hand, there would seem to be no doubt that this society is engaged in a religious work, and, as I have said before, if it was the nature of the work that controlled, I should hold it exempted as a religious corporation rather than as a charitable corporation. The law makes a distinction between the two, and evidently it was not the expectation of the Legislature that the term "charitable" was broad enough to cover both, as, if such had been the case, probably only the one term would have been used.

In the case of People v. Cothran, 27 Hun, 344, in speaking of the act of 1848, which authorized the incorporation of benevolent, charitable, scientific and missionary societies, the court says:

"If that act stood alone, a question might well be raised as to whether it was intended to authorize the formation of societies for the purpose of carrying on medical or other colleges, or any institution, whatever, which is primarily and exclusively "educational."

The same reasoning would apply to a society whose objects are those specified in the act of incorporation of a Bible society. The laws which grant special privileges or exemptions are to be construed liberally in favor of the public, and I do not think that the ordinary meaning of the term "charitable" should be extended to cover societies not organized for charitable purposes within the ordinary meaning of that term. If the character of the work was to control the standing of the society with reference to taxation, I should assume that a Young Men's Christian Association, which ministers both to the spiritual and material wants of young men, came more properly within the definition of a charitable institution, or corporation, than would a publication society; and yet, in the case of People ex rel. Brooklyn Christian Association, Relator, v. Willis, 23 Misc. Rep. 545, 52 N. Y. Supp. 937, it was held that the provisions of the charter of the city of Brooklyn providing that the several hospitals, orphan asylums, and all other charitable and benevolent corporations are exempt from the payment for water, must be held as limited to the class of institutions specifically named or similar thereto, and that for that reason the Young Men's Christian Association was not exempt from taxation.

I think the distinction between organizations which may receive charitable bequests and those which are exempt from taxation is pointed out in the case of Trustees of Y. M. C. A. v. City of Paterson, 61 N. J. Law, 420, 39 Atl. 665, which is cited in Words and Phrases Judicially Defined, vol. 2, p. 1086, where it is held that in the law relating to charitable uses it has a very wide meaning, but in the statute exempting from taxation its meaning is more restricted.

From my examination of the question I think the decision of the county treasurer was correct, and that his finding should be affirmed as to all matters except as to the legacy to the American Baptist Publication Society, and as to that it should be reversed, and an order entered assessing the tax on the legacy of $1,000 given that corporation.