In the Matter of the Estate of Louise I. Garrett, Deceased.

Surrogate's Court, Orange County, October 13, 1932.

*Frank S. Black*, executor, and attorney in person.

*Arthur J. W. Hilly, Corporation Counsel* [*Joseph H. Miles* of counsel], for the City of New York.

TAYLOR, S. The Middletown State Homeopathic Hospital, of which the decedent was for a time an inmate, presented to the executor a claim for care, medical treatment and maintenance of the decedent from April 19, 1928, to November 18, 1928, at $12.50 per week, or a total of $380.36. The claim was rejected by the executor. It is conceded that before the testatrix's death her committee was instrumental in having her committed to that institution. No claim is made that the rate charged is unreasonable, but the claim is resisted as matter of law under the decisions of *Matter of Humphries* (125 Misc. 62) and *Matter of Thomas* (132 id. 843). These two cases arose under sections 20 and 57 of the Poor Law, while this claim is to be determined under the Mental Hygiene Law. Because of this fact and for the reasons hereinafter assigned, I prefer to dispose of these two cases in connection with this particular claim upon the ground that they should be limited to proceedings under the former Poor Law (Laws of 1909, chap. 46, as amd.; repealed by Laws of 1929, chap. 565).

The Mental Hygiene Law, section 76, entitled " Liability for care and support of poor and indigent insane," provides that the Commissioner of Mental Hygiene shall procure from the patient's estate reimbursement at the rate fixed by the Commissioner, in whole or in part, of moneys expended for a patient's support, and the succeeding section provides that the committee of an estate of an incompetent, " if his estate is sufficient for the purpose," shall cause him to be properly and suitably cared for and maintained.

Section 40 provides that the superintendent of any State institution may bring an action or a special proceeding in the name of the institution to recover the amount charged and due for the support of any patient or inmate therein.

The account clearly indicates that the decedent had funds which could have been used for her care and maintenance in the Middletown Hospital, and since it is conceded that her committee was instrumental in obtaining the commitment to that institution there was certainly an implied, if not an express, contract to pay the reasonable value of the incompetent's care and maintenance.

In *Matter of Wesley* (156 App. Div. 403), arising out of the account of an incompetent's committee, it was held that " While the statute provides that all poor and indigent insane persons shall be supported by the State, that, I think, does not prevent the State from reimbursing itself for the support of such persons, if they in fact have property out of which the same may be collected, or collecting the same of the persons liable for the support of such poor and indigent persons."

Although there was a notice of appearance filed in behalf of the Attorney-General, he has not presented a brief or offered testimony. I, therefore, take as a fact the statement of the executor that there was a payment of twenty-five dollars which should be deducted from the bill presented. This claim, less said payment, will be allowed under the statute and upon the theory of contract as well.

The commissioner of hospitals of the city of New York has also presented a claim for furnishing general institutional care to the decedent at the Cumberland Hospital in the borough of Brooklyn for the period commencing April 5, 1929, and ending July 1, 1929, eighty-seven days, at three dollars per day.

Payment of this claim is resisted by the executor under the authority of *Matter of Humphries* (125 Misc. 62) and *Matter of Thomas* (132 id. 843). Both of these cases rely upon *City of Albany* v. *McNamara* (117 N. Y. 168), but it would seem that that case is distinguishable from this one, in that in the *City of Albany* case " the case is destitute of any evidence that the defendant's testatrix was not a proper object of bounty at the time the relief was extended to her." As hereinbefore stated, in the instant case the account of proceedings shows that the testatrix did possess property.

The *Humphries* and *Thomas* cases arose under sections 20 and 57 of the Poor Law. I fail to discover in section 57 of the Poor Law any condition, express or implied, to the recovery against a person or his estate for support and maintenance in a governmental institution, that the person cared for must have misrepresented or

concealed his true financial condition. The Poor Law was repealed by chapter 565 of the Laws of 1929, on April 12, 1929, and was replaced by the Public Welfare Law. Section 128 of the latter law provides that a public welfare official may bring an action against a person discovered to have real or personal property, or against the estate of a person who dies leaving property, and any public relief received by " such person " shall constitute an implied contract. While this section embodies the substance of section 57 of the former Poor Law, the last sentence, providing that there is an implied contract on the part of any person to pay for care and maintenance received, is new.

Section 685 of the Greater New York Charter provides that if it shall at any time be ascertained that any person who has received care or treatment through the commissioner of public welfare, has property an action may be maintained against such person or his estate to recover such sums as may have been expended in his or her support and treatment, and under this charter provision the commissioner of public welfare in the case of *Taylor* v. *Kelly* (145 Misc. 568) recovered from the estate the funds one had received as a " poor blind person." The learned court in that case well expressed what appears to be a just and equitable rule, namely, " the receipt by such persons implies that they are poor, and the responsibility is upon such person when such condition is questioned to show otherwise, and that he is a person specified in the statute, and should participate in such funds."

In all cases of this nature there are necessarily two features: (1) The duty of government to look after its indigent citizens, and (2) persons in need of and unable to pay for their own care and maintenance. In this case the latter requirement is lacking. To quote from *Matter of Moore* (66 Misc. 116, 120): " Charitable, in its usual and ordinary sense, means pertaining to almsgiving or relief of the poor, springing from charity, or intended for charity." A person financially able to pay for his treatment in an institution should not be permitted, in equity and justice, to presume upon the government to take care of his needs. This case meets the requirement laid down in *Pew* v. *First Nat. Bank* (130 Mass. 391, 395), quoted with approval in *Fitzgerald & Mallory Construction Company* v. *Fitzgerald* (137 U. S. 98), " to render such party liable as a debtor under an implied promise, it must be shown, not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for, or, at least, that the circumstances were such that a reasonable man in

the same situation with the person who receives and is benefited by them would and ought to understand that compensation was to be paid for them." Under this sound rule, the testatrix having property, the circumstances were such that she or the committee ought to have understood that reasonable compensation was to be paid for the treatment afforded.

This claim will also be allowed.