In the Matter of the Estate of REBECCA COLLINS, Deceased.

Surrogate's Court, Queens County, April 26, 1934.

*George A. Nagle,* for the executor.

*Arthur J. W. Hilly, Corporation Counsel,* for Frank L. Taylor, as commissioner of public welfare of the city of New York.

*Edward A. Coleman,* special guardian.

HETHERINGTON, S. The commissioner of public welfare of the city of New York filed on its behalf a claim against decedent's estate in the sum of $3,050 for reimbursement for relief awarded and paid to her during the period commencing August 1, 1923, and ending December 1, 1930. The claim was rejected by the executor and heard upon the judicial settlement of its account. It appears from the established or conceded facts that the decedent was a single daughter of an honorably-discharged Civil war veteran, and had received during the aforesaid period relief from the city pursuant to sections 80, 81 and 82 of the Poor Law and sections 117 and 119 of the Public Welfare Law. The decedent died possessed of personal property of the value of $156.56, of which $57.06 was in cash and the balance represented by personal and household effects, and seized of a parcel of realty of the appraised value of $1,700 which had been occupied by her as a home. The executor sold the realty and realized a gain of about $700. The net estate as shown by the account is $1,816.46. There is no dispute that during the period relief was afforded the decedent was in need

thereof, and that the claimant was aware of the fact that decedent owned her own home. On the hearing the claim was reduced to $2,385. Of this sum, $1,645 was paid to decedent prior to April 12, 1929 (the date upon which the Public Welfare Law became effective), and the balance of $740 was paid thereafter. It further appears that the decedent gave up her employment to care for her father in his declining years and that each of the checks evidencing the payments to her had the word " donation " printed on the face thereof. The city predicates its right to a recovery on section 685 of the Greater New York Charter and section 128 of the Public Welfare Law. The executor and the special guardian, claiming that there is a distinction between relief afforded to a poor person and to a veteran or his children as to the right of reimbursement, vigorously oppose the allowance of the claim. There being no dispute as to the material facts, the question presented is solely one of law, and can only be determined after an examination of the relevant statutes and decisions thereunder.

The provisions relative to veteran relief were originally contained in article 6 of the Poor Law, which has been superseded by the Public Welfare Law. The subject-matter of the aforesaid article of the Poor Law can now be found in article XIV of the Public Welfare Law. Relief in the instant case having been afforded prior and subsequent to the enactment of the Public Welfare Law, it becomes necessary to examine both statutes.

Section 80 of the Poor Law provides in part as follows: " No poor or indigent soldier, sailor or marine who has served in the military or naval service of the United States and who has been honorably discharged from such service nor his family nor the families of any who may be deceased, shall be sent to any almshouse, but shall be relieved and provided for at their homes in the city or town where they may reside, so far as practicable." Provision follows in this and subsequent sections as to the manner of disbursement of relief which it is not necessary to detail here as no claim is made that the statutory procedure was not followed in the decedent's case. The superseding statute, section 117 of the Public Welfare Law, while differing in phraseology, is substantially similar in its purpose. Both the old and new statutes evidence a legislative intention that the veteran and his family should be relieved at their *homes* and spared the humiliation of being cared for at an almshouse or public home; the latter term is defined by section 2 of the new act as synonymous with the former. The prohibition against committing the veteran or his family to either place reflects a purpose not to place him or his children upon the same plane with a common pauper. In other words, the statute

gives the veteran or his family preferential treatment not accorded to the common poor person. Further extension of the intention to discriminate between the needy veteran and the common pauper may be found in the statutory provisions providing for the burial of a veteran, his minor child or widow in a cemetery other than one used exclusively for the burial of poor persons. Such veteran and his widow are entitled to headstones appropriately inscribed. (Poor Law, §§ 84, 85, now Public Welfare Law, § 120.) All of these provisions indicate that the veteran is to be maintained and buried in an entirely different way from that provided for the relief and burial of the common poor. While the decedent here was not a veteran, she was a daughter of one, and as such was a proper subject for relief under section 80 of the Poor Law (*supra*), now section 117 of the Public Welfare Law. It seems reasonably clear that the command of the statute that the veteran or his family, when in need of public relief and care, should " be given relief and care in their own homes," precluded the city from maintaining an action against the decedent in her lifetime, based upon the fact that because she owned her own home, she had real property or other means out of which reimbursement might be had. In other words, mere ownership of a home with no other means created no right of reimbursement. Ownership of the home does not bar relief. The law contemplated support as well as shelter. In commanding that the veteran or his family should be maintained in their homes, the statute intended that they should not be interfered with in the possession, enjoyment and ownership thereof. If the decedent could be deprived of her home by execution and sale in her lifetime to satisfy a judgment recovered for reimbursement of relief extended, the statutory direction to care for and maintain her therein would be rendered nugatory and valueless. In my opinion the claimant's knowledge of the fact that decedent owned her home, the absence of personal property or other means coupled with the statutory direction as to the place of maintenance and care, precluded it from maintaining any action against her in her lifetime. Death does not give the claimant any additional rights. Claimant claims, however, the right to recover by virtue of the provisions of section 128 of the Public Welfare Law and section 685 of the Greater New York Charter. Section 128 provides as follows: "A public welfare official may bring action against a person discovered to have real or personal property, or against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received relief and care during the preceding ten years, and shall be entitled to

recover up to the value of such property the cost of such relief. Any public relief received by such person shall constitute an implied contract."

Section 128 of the Public Welfare Law superseded section 57 of the Poor Law, which reads as follows: " If it shall at any time be ascertained that any person, who has been assisted by or received support from any town, city or county, has real or personal property, or if any such person shall die, leaving real or personal property, an action may be maintained in any court of competent jurisdiction, by the overseer of the poor of the town or city, or the superintendent of the poor of any county which has furnished or provided such assistance or support, or any part thereof, against such person or his or her estate, to recover such sums of money as may have been expended by their town, city or county in the assistance and support of such person during the period of ten years next preceding such discovery or death."

Section 685 of the Greater New York Charter provides as follows: " If it shall at any time be ascertained that any person, who has received support or care or treatment from the city of New York through the commissioner of public welfare, has real or personal property or other means enabling him or her to reimburse the city of New York, an action may be maintained in any court of competent jurisdiction, by the commissioner of public welfare of such city, against such person or his or her estate to recover such sums of money as may have been expended by the city of New York through the commissioner of public welfare in the support or care or treatment of such person during the period of ten years next preceding such discovery or the death of such person." This section was not affected in any way by the enactment of the Public Welfare Law. (See Greater N. Y. Charter, § 1618.) The only substantial difference between the provisions of section 128 of the Public Welfare Law and section 57 of the Poor Law and the section of the charter just quoted, is the additional sentence contained in the former reading as follows: "Any public relief received by such person shall constitute an implied contract." In my judgment, the statutes just quoted do not aid the claimant. They merely afford a remedy to recover relief extended only in cases where the person receiving the same cannot be placed in the category of a poor or needy person. The possession of some property by a person does not always and necessarily preclude such person from a just claim for relief. (*City of Albany* v. *McNamara*, 117 N. Y. 168, 174.) The statute under which the decedent received relief contemplated that she might own the very thing which the claimant now seeks to resort to for reimbursement. In the case just cited

the court in referring to the principle supporting an action for reimbursement said: "In order to support such an action it is essential that a request on the part of the person benefited, to make such payment, either expressed or fairly to be implied from the circumstances of the case, must be proved." (RUGER, Ch. J., at p. 172.) Here there was no express agreement to repay. Can it "be implied from the circumstances of the case" where it appears that the payments were given and received as "donations," and the only means that the recipient had was a most modest home which the statute under which relief was extended contemplated she might have? I think not. No case allowing a recovery on similar facts has been called to my attention, nor does independent research disclose any. *Matter of Garrett* (144 Misc. 916) and *Taylor* v. *Kelly* (145 id. 568) are distinguishable from the case at bar because in neither case was the recipient in fact a poor person. In both cases they appeared to have funds which could and should have been used for their care and support. Here no such situation existed. Relief can and should be denied to one possessing funds, but apparently under the statute cannot be denied to a child of a veteran who has a home but no other property. The decedent was a needy person and unable to care for and maintain herself without assistance from the city. I am, therefore, of the opinion that the claimant is not entitled to recover and accordingly dismiss its claim upon the merits.